United States District Court
Southern District of Texas
FILED

FEB 1 3 2003

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| INSURANCE COMPANY OF THE WEST, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION B-02-193 *In Admiralty* |
| ESTATE OF LAZARO PONCE DE LEON GOMEZ, by and through its Temporary Administrator, Luis Omar Ponce de Leon, | § § § § § | *Honorable Judge Andrew S. Hanen* |
| Defendant. | § | |

---

# MOTION FOR SUMMARY JUDGMENT
# AND BRIEF IN SUPPORT

---

COUNSEL FOR DEFENDANT,
ESTATE OF LAZARO PONCE DE LEON GOMEZ,
By And Through Its Administrator
Luis Omar Ponce de Leon:

**KING, LeBLANC & BLAND, L.L.P.**
**Henry King**

3800 First NEC Center
201 St. Charles Avenue
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Telecopier (504) 582-1233

**FLEMING & HERNANDEZ, P.C.**
**Tom Fleming**
SBOT No. 07133000
Federal I.D. No. 1188

1650 Paredes Line Road
Suite 102
Brownsville, Texas 78521-1602
Telephone: (956) 982-4404
Telecopier: (956) 982-0943

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

FACTS OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

THE DECLARATORY JUDGMENT ACTION . . . . . . . . . . . . . . . . . . . . . . .  12

STATUTORY LIABILITY STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

THE COUNTERCLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

CERTIFICATE OF CONFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

## TABLE OF AUTHORITIES

**Page**

### Cases

Albany Insurance Company v. Anh Thi Kieu,
    927 F.2d 882 (5th Cir. 1991) ................................. 6

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 248 (1986) ................................. 5

Celotex v. Catrett,
    477 U.S. 317, 322-23 (1986) ............................... 5

Cora Pub, Inc. v. Continental Casualty Co.,
    619 F.2d 482, 487 (5th Cir. 1980) ......................... 6

Dow Chemical Company v. Royal Indemnity Company,
    635 F.2d 379, 386 (5th Cir. 1981) ........................ 11

Jewelers Mutual Insurance Co. v. Balogh,
    272 F.2d 889, 892 (5th Cir. 1959) ......................... 9

Miles v. Royal Indemnity Company,
    589 S.W.2d 725, 729
    (Tex. Civ. App.–Corpus Christi 1979, err. ref. n.r.e.) .............. 10

Morrison Grain Company, Inc. v. Utica Mutual Insurance Company,
    632 F.2d 424, 430 (5th Cir. 1980) ...................... 8,10

Newell v. Oxford Management, Inc.,
    912 F.2d 793, 795 (5th Cir. 1990)
    [citing Matsushita Electric Indus. Co. v. Zenith Radio Corporation,
    475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538,
    cert. denied, 481 U.S. 1029, 107 S.Ct. 1955,
    95 L.Ed.2d 527 (1986)] .................................. 5

North American Specialty Insurance Company v. Parra,
    1996 W.L. 592744 (E.D. La.) .......................... 5, 11

P. T. Tugs, Inc. v. United States Fire Insurance Company,
    796 F.2d 125 (5th Cir. 1986) ............................. 9

## *TABLE OF AUTHORITIES (cont'd.)*

*Page*

### *Cases*

*Rocor International, Inc. v. National Union Fire Insurance Company*,
   77 S.W.3d 253 (Tex. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13,14

*Soto v. Southern Life & Health Ins. Co.*,
   776 S.W.2d 752, 756 (Tex. App.–Corpus Christi 1989, no writ)  . . . . . . . 8

*State Farm Fire & Cas Co. v. Simmons*,
   963 S.W.2d 42 (Tex. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*State Farm Life Ins. Co. v. Beaston*,
   907 S.W.2d 430, 435 (Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Texas Eastern Transmission v. Marine-Office Appleton & Cox Corporation*,
   579 F.2d 561, 564 (10th Cir. 1978)  . . . . . . . . . . . . . . . . . . . . . . . .  10

### Rules

Federal Rules of Civil Procedure, Rule 56  . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5
   Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

### Codes

Texas Insurance Code, Section 21.21  . . . . . . . . . . . . . . . . . . . .  13,14,15,16,17
   Article 21.21(10)(a)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   Section 16(b), Article 21.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
   Subsection 4(10)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   Subsection 4(10(a)(ii)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   Subsection 4(10)(a)(iv)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   Subsection 4(10)(a)(v)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

### Other Authorities

Restatement of Contracts § 219, comment a  . . . . . . . . . . . . . . . . . . . . . . . . 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **INSURANCE COMPANY OF** | § | United States District Court<br>Southern District of Texas<br>FILED |
| **THE WEST,** | § | |
| | § | FEB 13 2003 |
| **Plaintiff,** | § | **Michael N. Milby**<br>**Clerk of Court** |
| | § | |
| **vs.** | § | **CIVIL ACTION B-02-193** |
| | § | *In Admiralty* |
| **ESTATE OF LAZARO PONCE** | § | |
| **DE LEON GOMEZ, by and through** | § | |
| **its Temporary Administrator,** | § | *Honorable Judge Andrew S. Hanen* |
| **Luis Omar Ponce de Leon,** | § | |
| | § | |
| **Defendant.** | § | |

---

# MOTION FOR SUMMARY JUDGMENT
# AND BRIEF IN SUPPORT

---

TO THE HONORABLE JUDGE OF SAID COURT:

The Motion for Summary Judgment is brought pursuant to Federal Rules of Civil Procedure, Rule 56, in that there is no genuine issue as to any material fact and the **Estate of Lazaro Ponce de Leon Gomez** is entitled to judgment as a matter of law.

### Facts Of The Case

1.      On June 17, 1992, the United States District Court for the Southern District of Texas confirmed the sale of the M/V "Sun Venture", Official Number 669980 to the Federal Deposit Insurance Corporation on its bid, on credit, of Thirty Thousand and no/100ths ($30,000.00) Dollars. Prior to this sale, the boat had been deleted from registration with the United States Coast Guard.

2.    The "Sun Venture" ultimately became the property of Lunar Building and Investment Company, a Texas limited partnership of Houston, Texas which kept it at dock in Freeport, Texas.   The vessel was sold to Lazaro Ponce de Leon on June 27, 2000 without having been re-registered with the United States Coast Guard. The purchase/sales price of the vessel was Fifty-Five Thousand and no/100ths ($55,000.00) Dollars.

3.    After purchasing the "Sun Venture", Lazaro Ponce de Leon set out to renovate the vessel at a shipyard in Freeport called Freeport Yacht Services during which time approximately Two Hundred Thousand and no/100ths ($200,000.00) Dollars was spent on the boat.  After renovation, Mr. Ponce de Leon renamed the boat "Sea Scape".

4.    Upon completion of the renovation, the vessel was sailed to Port Isabel, Texas where, during the month of October 2000, she was hauled from the water at Zimco Marine, Inc., a shipyard, for replacement of a bent propeller shaft, propeller repair and installation of a stainless steel shaft strut.   While out of the water at Zimco Marine, Inc., the vessel was surveyed by Gilberto Medina, an Accredited Marine Surveyor.   That survey found the vessel to be in Average Condition requiring no additional work and normally equipped for her size.  The survey also found only two minor deficiencies concerning covering the positive battery terminals and properly securing those batteries.  It was noted in the survey that the vessel did not have alarms for high bilge water.  A copy of this survey is attached to this motion as "Exhibit A".

**5.**    On October 23, 2000, Ponce de Leon submitted to Insurance Company of the West a completed Vessel Owner Application requesting a policy of insurance covering the "Sea Scape". This application was completed with the assistance of Luis Ponce de Leon because of the limited English proficiency of Lazaro Ponce de Leon. Affidavit of Luis Ponce de Leon is attached as "Exhibit B". A copy of this application is attached as "Exhibit C". A policy of "Yacht Insurance" numbered MYA0000652 was issued effective November 15, 2000 for a one-year period by Insurance Company of the West through Pacific Underwriting Professionals containing, among other coverage, Hull & Machinery protection in the amount of Two Hundred Eighty-five Thousand and no/100ths ($285,000.00) Dollars with a deductible of Eight Thousand Five Hundred Fifty and no/100ths ($8,550.00) Dollars not applicable to a total loss. A copy of this Yacht Insurance Policy is attached as "Exhibit D". This policy coverage for Hull and Machinery was identical to the surveyed value of the "Sea Scape" of Two Hundred Eighty-five Thousand and no/100ths ($285,000.00) Dollars.

**6.**    Following receipt of the insurance coverage and repairs to the propeller and shaft, Ponce de Leon and his son, Luis Ponce de Leon, left Port Isabel, Texas for the Caribbean Sea, the designated area of Navigational Limits described in the policy. Whether the allowed one-way trip from Port Isabel, Texas to the Cayman Islands was made is irrelevant since the vessel arrived in the Caribbean without mishap. See Affidavit of Luis Ponce de Leon, "Exhibit B".

**7.**    On March 1, 2001, Ponce de Leon and his son, Luis, left Chinchorro Banks, where the boat had anchored overnight, in route to Manahual, State of

Quintana Roo, Mexico to refuel and reprovision. During this trip of some eight miles, the vessel began taking on water in the bow and becoming rapidly unable to make headway. Despite several attempts to raise the Mexican Coast Guard, the vessel was finally abandoned and eventually sank between the Chinchorro Banks and Manahual. See Affidavit of Luis Ponce Leon, "Exhibit B". A property loss notice was made on March 2, 2001 to the insurer through its agent, Paul Lynch & Associates, Inc. A copy of that loss report is attached as "Exhibit E".

8.      Shortly after receipt of the loss notice, Insurance Company of the West hired Cook Claim Services, Inc. of Mobile, Alabama to investigate and adjust the claim. On June 6, 2001, without denying the claim or giving anyone a reason for not paying the claim, the insured filed suit in Mobile, Alabama seeking a declaratory judgment that the policy of insurance was void because of unspecified acts of fraud and misrepresentation of Mr. Lazaro Ponce de Leon and/or his agents.

9.      Lazaro Ponce de Leon died of a stroke in early April 2001 while in Cuba visiting relatives. His son, Luis Ponce de Leon, was appointed administrator of the estate by the Cameron County Court at Law No. 3. A copy of the Order is attached as "Exhibit F". The insurer, Insurance Company of the West, has given no notice of claim denial except by the filing of the action for declaratory judgment and has given no factual basis either prior to or after filing suit for such denial nor has it pleaded an exception to coverage. The estate has not received any payment for its loss. See Affidavit of Luis Ponce de Leon, "Exhibit B".

## Standard Of Review

This motion is brought under Fed. R. Civ. P. 56. No explanation of the standard is better than as set out in *North American Specialty Insurance Company v. Parra*, 1996 W.L. 592744 (E.D. La.). Summary judgment pursuant to Rule 56 is proper where there are no genuine issues of material fact and the moving party if entitled to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). While all inferences will be made in favor of the party opposing summary judgment, that opposing party may not rely on mere allegations or denials but must set forth specific facts establishing that genuine issues exist for trial. See Fed. R. Civ. P. 56(e). Only factual disputes "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Newell v. Oxford Management, Inc.*, 912 F.2d 793, 795 (5th Cir. 1990) [citing *Matsushita Electric Indus. Co. v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538, cert. denied, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1986)].

## Argument And Authorities

The policy of insurance issued by Insurance Company of the West is an all-risk policy excluding only loss or damage caused by or resulting from designer's errors or negligence. See page 4, "Exhibit D". This policy was issued by the insurer after receipt of both the application for insurance and the ship survey.

An application for insurance is presumed to ask all questions relevant to the insurer's decision to issue a policy and the insured is entitled to rely on that presumption. *Cora Pub, Inc. v. Continental Casualty Co.*, 619 F.2d 482, 487 (5th Cir. 1980). The application required by the insurer and submitted by Lazaro Ponce de Leon for insurance on the "Sea Scape" makes no inquiry of his citizenship, his marital status, the existence of high bilge water alarms on the vessel, the source of the funds used to acquire and restore the vessel, the business relationships of the applicant, nor the existence of criminal records of his children. Ponce de Leon was and his estate is entitled to rely on the presumption that these facts were not considered material by the insurer in making a decision on the risk or the amount of premium to be charged. Insurance Company of the West can avoid the policy only by proving that a concealment was intentional, fraudulent and material to the risk assumed. *Id.* at 487. An insurer must show that the concealed information, if any, was of a fact which made the covered risk marginally more likely to occur. *Id.* at 487.

Assuming, *arguendo*, that the insurer claims that the absence of alarms for high bilge water would have, if known, made the covered risk marginally more likely to occur, the insurer would be admitting that it chose to ignore the notation in the survey that no such alarms existed. See "Exhibit A", p. 25.

If we next assume that the insurer believes that some misrepresentation of either Lazaro Ponce de Leon or his son, Luis, voids the all-risk policy, we must examine the applicable law. This issue has been thoroughly discussed by the Fifth Circuit in *Albany Insurance Company v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir. 1991).

Anh Thi Kieu was a Vietnamese immigrant residing in Texas who purchased a sixty-five (65') foot shrimping vessel in 1984. The English language application for insurance for 1988 was completed by Anh Thi Kieu and relied upon to issue coverage by the insurer. In that application, Anh Thi Kieu claimed that she regularly operated the vessel; that the vessel had sustained no damages in the last five years; and that she had purchased the vessel for One Hundred Ten Thousand and no/100ths ($110,000.00) Dollars. Each of these statements was untrue. Anh Thi Kieu paid only Thirty Thousand and no/100ths ($30,000.00) Dollars for the vessel, had an independent crew fish and operate the vessel, and the boat had been damaged in a collision the same year of purchase. Needless to say, after the issuance of the policy of insurance, the vessel allided with an unmarked offshore platform. After investigation, the insurer filed a declaratory judgment action in federal district court requesting a declaration of Anh Thi Kieu's rights in the policy.

In determining whether the federal doctrine of *uberrimae fidei* or the Texas state law applied, the Fifth Circuit concluded that the *uberrimae fidei* doctrine is not "entrenched federal precedent". *Id.* at 889. The Court next applied the analysis found within the Restatement (Second) of Conflict of Laws § 6 (1980) and concluded that the law of the State of Texas applied because it was the state having the greatest interest in the resolution of the issues. *Id.* at 890. As such, the Court noted that an insurer may invalidate a policy of insurance on the basis of an insured's misrepresentations only if the insurer can successfully plead and prove the five basic elements of fraud, i.e.: (1) the making of the representation; (2) the falsity of the

representation; (3) reliance thereon by the insurer; (4) the intent to deceive on the part of the insured in making the same; and (5) the materiality of the representation. *Id.* at 891. It is important to note that an insurer must both plead and prove the insured's intent to deceive. Insurance Company of the West has no pleadings before this Court of such intent, nor has it alleged any factual basis asserting such intent. In conclusion, the Court noted that a . . . "unique aspect of this Texas law is the requirement that the insurer plead and prove the insured's intent to deceive" [citing *Soto v. Southern Life & Health Ins. Co.*, 776 S.W.2d 752, 756 (Tex. App.–Corpus Christi 1989, no writ)] that "it is incumbent upon the insurer to prove that the insured made some material misrepresentation 'willfully and with design to deceive or defraud', as an element of this (misrepresentation) defense."] *Id. at 890.* Further, the Court held that the negligence or carelessness of the insured in completing an application for insurance does not support the invalidation of an insurance policy. *Id.* at 892.

Next, we examine the benefits to an insured and the inherent risks to the insurer of an all-risk policy. An all-risk policy has been defined as having arisen for the purpose of protecting the insured in cases in which difficulties of logical explanation exist or some mystery surrounds the loss of or damage to property. *Morrison Grain Company, Inc. v. Utica Mutual Insurance Company*, 632 F.2d 424, 430 (5th Cir. 1980). Neither party in this matter at bar has any explanation for the "Sea Scape" suddenly taking on water after restoration and travel from Port Isabel to the Caribbean Sea; yet, it happened. See Affidavit of Luis Ponce de Leon, "Exhibit B".

This event is one for which the insured paid for coverage and one for which the insurer assumed the risk. Under an all-risk policy, the insured is not required to negative each of the policy exceptions in order to recover. *Jewelers Mutual Insurance Co. v. Balogh*, 272 F.2d 889, 892 (5th Cir. 1959).

An almost identical factual occurrence is set out in *P. T. Tugs, Inc. v. United States Fire Insurance Company*, 796 F.2d 125 (5th Cir. 1986). P. T. Tugs owned the tugboat, "Juanita D.". On July 25, 1984, the "Juanita D." sank in the Mississippi River while anchored for the night. The captain and crew avoided drowning in bed only by quickly awakening and swimming ashore. The "Juanita D." was never located, and no physical evidence exists to explain why the vessel sank. The tug was deemed seaworthy immediately prior to its sinking because (1) it made several trips on the river in the three to four days prior to the sinking without incident; (2) a survey of the vessel had been recently conducted which found the tug to be seaworthy; and (3) the tug had been dry docked in the prior years for successful repairs to the hull during which the hull was found to be in good condition. *Id.* at 126. Once the vessel is deemed seaworthy, there arises a presumption that the loss was caused by a "fortuitous suit of the sea". By analogy, the "Sea Scape" (1) had traveled from Port Isabel, Texas down the Mexican coast and around the Yucatan peninsula without incident; (2) had been surveyed less than six months prior and found to require no repairs and (3) had been dry docked in Port Isabel, Texas at the time of the survey so that its hull and wet surfaces were inspected by the surveyor. The Estate of

Lazaro Ponce de Leon is entitled to the presumption that the "Sea Scape" was lost by a "fortuitous suit of the sea".

The insured has only the burden to prove that (1) a loss occurred and (2) it was due to some fortuitous event or circumstance. *Texas Eastern Transmission v. Marine-Office Appleton & Cox Corporation*, 579 F.2d 561, 564 (10th Cir. 1978). A fortuitous event has been described as one which, so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, as the loss of a vessel, provided that the fact is unknown to the parties. *Morrison Grain* at 431 citing the Restatement of Contracts § 219, comment a. Courts have held that a loss may be fortuitous even if it is occasioned by the negligence of the insured. *Morrison Grain* at 431.

The Texas general rule regarding "all risks" policies is discussed in *Miles v. Royal Indemnity Company*, 589 S.W.2d 725, 729 (Tex. Civ. App.–Corpus Christi 1979, err. ref. n.r.e.). The Court held that " . . . an all risks' policy creates a special type of coverage. Recover under such a policy is generally allowed for all losses of a fortuitous nature in absence of fraud or other intentional misconduct of the insured unless, of course, the policy contains a provision excluding the specific loss from coverage". The Court disposed of the issue of liability of the insurer in that case in the following manner:

> "In this case, (the insured) was not required to prove exactly what caused the boat to sink, only that the sinking was of a fortuitous nature which the evidence shows that it was. If the boat was seaworthy just

prior to its sinking, then the 'all risks' marine insurance policy issued by (the insurer) would require the insurance company, under its contract with (the insured), to pay (the insured) the reasonable and necessary costs of repair and storage of the boat." p. 731.

The Fifth Circuit in *Dow Chemical Company v. Royal Indemnity Company*, 635 F.2d 379, 386 (5th Cir. 1981) further explained the Texas rule by stating that " . . . insurance policies will be interpreted liberally in favor of the insured and ambiguities strictly against the insurer, especially when dealing with exceptions and words of limitation".

In a case of remarkable similarity based on a Louisiana statute very similar to the Texas rule explained above, the United States District Court for the Eastern District of Louisiana discussed the effect of a claim of a material misrepresentation. In *North American Specialty Insurance Company v. Parra*, 1996 W.L. 592744 (E.D. La.), the facts were that Parra purchased a sixty-two (62') foot houseboat for Fifty-five Thousand and no/100ths ($55,000.00) Dollars. The boat had been surveyed and found to be in "like new" condition. Parra was required to obtain a new marine survey in order to renew the policy of insurance. The new survey report was prepared by an unqualified person and, as it later appeared, was false. Following an event in which the boat foundered and was intentionally grounded to avoid sinking, the insurer filed a declaratory judgment action to declare that the policy of insurance was void *ab initio* and afforded no coverage.

The District Judge noted that state law, rather than the doctrine of *uberrimae fidei* controlled the issue of whether an insured's misrepresentation of a

material fact in the negotiation for a marine insurance policy voided that policy. Further, the Court required the insurer establish that the misrepresentations were made with the intent to deceive, with knowledge of that falsity and that such misrepresentation materially affect the acceptance of the risk by the insurer. However, even if the information was false and offered with the intent to deceive, it was still not material if the insurance company would have issued the policy anyway. Insurance Company of the West has no factual basis to prove an intent to deceive by Lazaro Ponce de Leon nor that he was aware of any material misrepresentation upon which it relied to determine to accept the risk and issue the policy of insurance. Additionally, Insurance Company of the West has no pleadings before this Court upon which to base these necessary assertions.

### The Declaratory Judgment Action

The action filed by Insurance Company of the West requesting first the District Court in Mobile, Alabama and now this Court void the policy of insurance must fail. First, the pleading on its face does not allege that Ponce de Leon intended to deceive nor is any misrepresentation set out upon which it could base this allegation. Second, there are no factual allegations of a representation which the insurer alleges is false. Third, the insurer fails to even allege that it relied upon a misrepresentation made by Ponce de Leon nor has it alleged that some specific misrepresentation was material in its decision to issue the policy of insurance.

Declaratory judgment should be entered that Ponce de Leon had a valid and enforceable policy of insurance issued by Insurance Company of the West and that

Lazaro Ponce de Leon suffered a loss insured by that policy for which Insurance Company of the West is liable. The declaratory judgment should also award to the Estate of Lazaro Ponce de Leon its attorney's fees incurred in the declaratory judgment action in the amount set out in the Affidavits of Henry King ("Exhibit G") and Tom Fleming ("Exhibit H").

### Statutory Liability Standard

The basis for the counterclaim filed by the Estate of Lazaro Ponce de Leon relies upon Article 21.21, Texas Insurance Code. There has been, until recently, some question as to whether an insured has a private cause of action for unfair claim settlement practices against its insurer under this Article of the Insurance Code. That question has now been answered by the Texas Supreme Court in *Rocor International, Inc. v. National Union Fire Insurance Company*, 77 S.W.3d 253 (Tex. 2002).

In *Rocor*, the insured sued its excess liability carrier for costs incurred in defending a lawsuit while the insurer delayed settling the claim. Rocor contended that its insurer had failed and refused to settle a claim against Rocor for approximately twenty-four (24) months while Rocor incurred costs in defending the suit. Upon final settlement of the claim, Rocor filed suit to recover its attorney's fees and costs incurred as a result of the insurer's failure to promptly effectuate settlement. The suit was based, in part, on Article 21.21(10)(a)(ii) which proscribes an insurer failing to "attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear".

The Court first noted that the Texas Legislature has mandated that Article 21.21 "be liberally construed and applied to promote its underlying purposes as set forth in this section". *Id.* at 260. The Court then summarily noted that the purposes of Article 21.21 is to protect insurance consumers by prohibiting unfair or deceptive practices in the business of insurance. *Id.* at 260 citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 435 (Tex. 1995).

In determining the proper standard, the Court held that in order to trigger an insurer's statutory duty to reasonably attempt settlement, the policy must cover the claim and the insurer's liability must be reasonably clear. *Id.* at 261. While *Rocor* discussed a third-party claim and the claim before the bar is a first-party claim, there exists only a distinction without a difference. The theory remains constant. Additionally, there is required a settlement demand within policy limits with terms such that an ordinarily prudent insurer would accept. *Id.* at 261-62. In summary, the Rule was stated that an insured must show that (1) the policy covers the claim; (2) the insured's liability is reasonably clear; (3) the claimant has made a proper settlement demand within policy limits; and (4) the demand's terms are such that an ordinarily prudent insurer would accept it.

The summary judgment evidence before this Court adequately demonstrates that the policy of insurance covering the "Sea Scape" was an "all risk" policy containing exceptions which are inapplicable. <u>See</u> "Exhibit D". The policy limits for hull and machinery coverage was Two Hundred Eighty-five Thousand and no/100ths ($285,000.00) Dollars. The "Sea Scape" sank on March 1, 2001 of a fortuitous event

clearly covered by the "all risk" policy. The insured made demand on the insurer for payment of the claim within the policy limits (See "Exhibit H") and, given the "all risk" nature of the policy coupled with the contractual obligation of insurer to pay for covered losses within thirty (30) days after proof of loss, the terms of the demand were such that an ordinarily prudent insurer would accept. Insurer has not provided to its insured any factual basis for denial of the claim nor has it advised this Court in its pleadings of any such facts. Insurer has merely delayed its payment, without justification, for pure economic reasons.

### The Counterclaim

The Complaint for Declaratory Judgment was filed by Insurance Company of the West in United States District Court in Mobile, Alabama on June 6, 2001. This suit was filed without having given Lazaro Ponce de Leon or his administrator notice that the claim would be rejected or that the validity of the policy would be challenged. The policy of insurance ("Exhibit D") at page 1 requires a covered loss to be paid within thirty (30) days after proof of loss and proof of interest in the vessel. The proof of loss was made on March 2, 2001, and the insurer never questioned the insured's interest in the "Sea Scape". Not only did the insurer not pay the loss within the required thirty-day period, it failed to give notice of the claim rejection until the suit was filed on June 6, 2001. The insurer has yet to state a factual basis for the rejection of the claim.

The Texas Insurance Code, Section, 21.21, defines unfair practices within that industry and prohibits the trade practices so defined. Subsection 4(10)(a) contains a

"laundry list" of settlement practices defined as unfair and prohibited by the act. Subsection 4(10)(a)(ii) prohibits an insurer failing to attempt in good faith to effectuate prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become <u>reasonably</u> clear.  (Emphasis added).  Subsection 4(10)(a)(iv) prohibits an insurer from failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim. Subsection 4(10)(a)(v)(A) prohibits an insurer failing within a reasonable time to affirm or deny coverage of a claim to a policyholder.

The "Sea Scape" sank on March 1, 2001 due to a fortuitous event or circumstance. <u>See</u> Exhibit of Luis Ponce de Leon, "Exhibit B". Proof of loss was made on March 2, 2001. This suit was filed in an improper venue on June 6, 2001. No effort has been made by the insurer to effectuate a settlement of any type until the mediation requested after the Article 21.21 demand notice.  That mediation was held on February 12, 2003, almost twenty-four (24) months after the loss and proof of loss.    The probability of the insurer's liability has been reasonably clear under applicable law since shortly after the loss, as is evidenced by the continuing failure of the insurer to give a reason or to plead a factual basis for denial of the claim. <u>See</u> *State Farm Fire & Cas Co. v. Simmons*, 963 S.W.2d 42 (Tex. 1998). This failure to state a factual basis meets the definition of an unfair practice set out at Subsection 4(10)(a)(iv) of Article 21.21. Finally, the insurer failed to comply with the provisions of its own policy when it failed to affirm or deny coverage of the claim within the

thirty-day period by which it had bound itself.  These failures of omission and commission constitute unfair settlement practices and are sanctionable under Section 21.21.

### Conclusion

Judgment should be entered granting to the Estate of Lazaro Ponce de Leon the relief set out at Section 16(b), Article 21.21 of three times actual damages, plus court costs and reasonable and necessary attorney's fees, as shown by the Affidavit of the Trial Counsel at "Exhibit H".

The Estate of Lazaro Ponce de Leon requests the entry of a declaratory judgment that the policy of insurance numbered MYA0000652 was a valid and enforceable policy of insurance covering the loss of the M/V "Sea Scape" for which Insurance Company of the West is liable.  The declaratory judgment should also award reasonable and necessary attorney's fees for the defense of the Estate of Lazaro Ponce de Leon.

The Court is also requested to enter judgment pursuant to Article 21.21, Texas Insurance Code against Insurance Company of the West for three times the actual damages of Two Hundred Eighty-five Thousand and no/100ths ($285,000.00) Dollars (less deductible of $8,550.00) suffered by the Estate of Lazaro Ponce de Leon, plus costs of court and its reasonable and necessary attorney's fees.

DATED this _12_ day of February, 2003.

Respectfully submitted,

**COUNSEL FOR DEFENDANT,**
**ESTATE OF LAZARO PONCE DE LEON GOMEZ,**
**By And Through Its Administrator**
**Luis Omar Ponce de Leon:**

**KING, LeBLANC & BLAND, L.L.P.**
**Henry King**

**FLEMING & HERNANDEZ, P.C.**
**Tom Fleming**
**SBOT No. 07133000**
**Federal I.D. No. 1188**

3800 First NEC Center
201 St. Charles Avenue
New Orleans, Louisiana  70170
Telephone:  (504) 582-3800
Telecopier   (504) 582-1233

1650 Paredes Line Road
Suite 102
Brownsville, Texas  78521-1602
Telephone:  (956) 982-4404
Telecopier:  (956) 982-0943

by:  _____
Tom Fleming

## CERTIFICATE OF CONFERENCE

Local Rule 6(4) excepts motions of summary judgment under Fed. R. Civ. P. 56 from the requirement of conference; however, this motion was discussed with Opposing Counsel on February _12_, 2003 and is opposed.

_____
Tom Fleming

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing MOTION FOR SUMMARY

JUDGMENT AND BRIEF IN SUPPORT was served on February _13_ , 2003 in the manner(s)

indicated below upon the following Counsel-of-record:

> COUNSEL FOR PLAINTIFF
> INSURANCE COMPANY OF THE WEST:
> Paul A. Bezney
> Tracy L. Stoker
> DODGE, ANDERSON & JONES, P.C.
> One Lincoln Centre
> 5400 LBJ Freeway, Suite 800
> Dallas, Texas  75240-6223
> (Certified United States Mail, R.R.R., #7002 1000 0004 6927 9829)

Tom Fleming

# "EXHIBITS A - H"

## TO
## MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT

**"EXHIBIT A"**

# Global Yacht & Ship Surveyors

## Marine Surveying and Consulting

# Bertram International

## 63' Cockpit Motor Yacht

## *"SEA SCAPE"*



**2462 Coral Way.**
**Miami, Florida. 33145-3410**
**Phone (305) 860-6999**
**Fax (305) 858-4537**


RECEIVED JUL 1 6 2001

EXHIBIT NO. A

# REPORT OF MARINE SURVEY

OF THE VESSEL

## " SEA SCAPE"

**BELRTRAM  63' COCKPIT MOTOR YACHT**

**CONDUCTED BY:**

**GILBERTO  MEDINA, A.M.S.**
**Accredited Marine Surveyor**

**PREPARED EXCLUSIVELY FOR:**

**Mr. LAZARO PONCE DE LEON**

October 20th,  2000

**Society of Accredited Marine Surveyors**

**Global Marine Surveyors**
**2462 Coral Way**
**Miami, Florida 33145**
**Phone (305)  860 6999**
**Fax (305)  858 4537**

# TABLE OF CONTENTS

| SECTION | | PAGE NO. |
|---|---|---|
| | NOTICE TO THE SURVEY PURCHASER. . . . . . . . . . . . . . | 1 |
| I. | INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| II. | GENERAL INFORMATION: . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| III. | SYSTEMS: | |
| | *A. HULL, DECK AND SUPERSTRUCTURE. . . | 6 |
| | *B. CABIN INTERIOR. . . . . . . . . . . . . . . . . . . . . | 9 |
| | *C. PROPULSION SYSTEM. . . . . . . . . . . . . . . . | 12 |
| | *D. ELECTRICAL SYSTEMS. . . . . . . . . . . . . . . . | 15 |
| | *E. FUEL SYSTEMS. . . . . . . . . . . . . . . . . . . . . . | 18 |
| | *F. FRESH WATER SYSTEM. . . . . . . . . . . . . . . | 19 |
| | *G. SANITATION. . . . . . . . . . . . . . . . . . . . . . . . | 20 |
| | *H. STEERING SYSTEM. . . . . . . . . . . . . . . . . . | 20 |
| | *I. GROUND TACKLE . . . . . . . . . . . . . . . . . . . . | 21 |
| | *J. ELECTRONICS / NAVIGATION. . . . . . . . . . | 21 |
| | *K. THRU-HULL FITTINGS. . . . . . . . . . . . . . . . | 23 |
| | *L. BONDING SYSTEM. . . . . . . . . . . . . . . . . . . | 23 |
| | *M. SAFETY EQUIPMENT. . . . . . . . . . . . . . . . . | 24 |
| | *N. AIR CONDITIONING AND HEAT. . . . . . . . . | 26 |
| IV. | FINDINGS AND RECOMMENDATIONS. . . . . . . . . . . . . . | 27 |
| V. | SUMMARY AND VALUATION. . . . . . . . . . . . . . . . . . . . . | 28 |
| | PHOTOGRAPHS. | |

# NOTICE TO THE SURVEY PURCHASER

This report is issued without prejudice, solely for the use of the below signed purchaser. Subsequent updating and transfer of this survey report is solely the right of the surveyor. This report should be considered as an entire document. No single section is meant to be used except as part of the whole. This survey report is based on the professional opinion of the individual marine surveyor, the BUC Research compilation of data of like kind boats in the market place and represents the surveyors opinion, and knowledge of local marine market conditions. This survey report is issued subject to the condition that neither the surveyor nor his employing firm are to be held liable for errors of any kind. This includes any omission, negligence, inaccuracy, misrepresentation or misstatement in this report, or in his performance as a marine surveyor. This report is only a statement of opinion, and describes the vessel on the day and time it was surveyed only, is neither a guarantee nor a warranty of the present or future condition of the vessel, its hull, machinery, unforeseen or undetected damages or other conditions that may exist.
This survey report is invalid until the report fee is paid in full.

The use of this report, for any purpose, shall indicate the purchaser's acceptance of the above conditions.

OFFERED: _____   Date
Gilberto Medina, A.M.S.
Accredited Marine Surveyor

ACCEPTED: _____ 10/20/2000
Mr. Lazaro Ponce De Leon              Date

# I. INTRODUCTION

Acting at the request of Mr. Lazaro Ponce de Leon the attending surveyor did attend onboard the **Beltram, 64', Motor Yacht, "SEA SCAPE"** beginning on October 20th, 2000 at port Isabel texas 78578 400 wachingt street. where she lay afloat at her berth The ship's papers were on board. The Hull Identification Number NT3890 NO332512 AL 3791 was verified from the transom. A sea trial was not performed. An out-of-the water inspection of underwater machinery and the exterior of the hulls wetted surface area was performed. The reason for the survey, was for Underwriters Consideration and ascertain value of the vessel. This is **not** a full Condition and Value Survey. References to moisture readings throughout the body of this report were taken using the Sovereign Moisture Master. AC and DC power was used to check operation of the systems specified in this report only.

No reference or information should be construed to indicate any of the following:

   *1.*      *Evaluation of the internal condition of the engines and the*
           *propulsion system's operating capacity.*


   *2.*      *The condition of any surface or machinery below the waterline.*


This vessel was surveyed without removals of any parts, including fittings, tacked carpet, screwed or nailed boards, anchors and chain, fixed partitions, instruments, clothing, spare parts and miscellaneous materials in the bilges and lockers, or other fixed or semi-fixed items.    Locked compartments or otherwise inaccessible areas would also preclude inspection.   Buyer/owner is advised to open up all such areas for further inspection. Inspections were conducted through access hatches and openings were possible. **Only non-destructive testing was performed, and no disassembly of components was done unless specifically stated.** Further, no determination of stability characteristics or inherent structural integrity has been made and no opinion is expressed with respect thereto. This survey report represents the condition of the vessel on the above date, and is the unbiased opinion of the undersigned, but it is not to be considered an inventory or a warranty either specified or implied.

**NOTE:**   It is recommend that all diesel and gasoline engines be surveyed by a qualified Engine Surveyor to determine the condition of the engines, gears and pumps, heat exchangers, coolers, etc. Further we recommend a sea trail be performed and evaluated by a competent marine surveyor and that the vessel be hauled out for dry dock inspection of hull and underwater machinery.

# I. INTRODUCTION

**THE MANDATORY STANDARDS PROMULGATED BY THE UNITED STATES COAST GUARD (USCG), UNDER THE AUTHORITY OF TITLE 46 UNITED STATES CODE (USC); TITLE 33 AND TITLE 46, CODE OF FEDERAL REGULATIONS (CFR), AND THE VOLUNTARY STANDARDS AND RECOMMENDED PRACTICES DEVELOPED BY THE AMERICAN BOAT AND YACHT COUNCIL (ABYC) AND THE NATIONAL FIRE PROTECTION ASSOCIATION (NFPA) HAVE BEEN USED AS GUIDELINES IN THE CONDUCT OF THIS SURVEY.**

The use of the word "appears" is intended to indicate that a close or complete inspection was not possible or it was not deemed appropriate at the time of this survey. The deficiencies reported herein reflect the conditions observed at the time the survey was conducted.

Use of the asterisk (*) **followed by a letter and a finding number** in the body of the report will indicate that a finding will be listed in the *Findings and Recommendations* section pertaining to the asterisked item, following the body of the report.

# II. GENERAL INFORMATION

SURVEY PREPARED FOR:  Lazaro Ponce De Leon
                      1340 S.W 74 AVE # Rear
                      Miami, Florida 33144 – 5340

FILE NUMBER…………………………………    2468925
NAME OF VESSEL ................................................    **"SEA SCAPE"**
TYPE OF SURVEY..............................................    **Underwriter Consideration**
**OVERALL VESSEL RATING**............................ ††    **AVERAGE CONDITION.**
**ESTIMATED MARKET VALUE**........................... ††    **$285,000.00**
**ESTIMATED REPLACEMENT COST** ................. ††    **$1,700.000.00**
HULL IDENTIFICATION NUMBER (HIN)............    **NT3890 NO332512 AL 3791**
U.S. CERTIFICATE OF DOC. OFFICIAL NUMBER †††    **669980**
YEAR/MAKE/MODEL OF VESSEL .......................    1967 / 63' Bertram
. ...............................................................................    International  Motor Yacht.
HAILING PORT..........................................................    Miami, Florida.
OWNER'S NAME .....................................................    Lazaro Ponce De Leon
OWNER'S ADDRESS ...............................................    1340 S.W. 74 Ave
..............................................................................…..    Miami Florida, 33144-5340
PLACE OF SURVEY ...............................................    Frenchman Creek Marina
..............................................................................…..    2700 Donald Ross Road
..............................................................................…..     Palm Beach Gardens, Florida.
DATES / TIME OF SURVEY ...................................    Oct. 20th, 2000 / 1000-1600
BUILDER.................................................................... †    Bertram International.
PLACE BUILT. ....................................................... †    Yokosuka, Japan.
DESIGNER...........................................................…†    Bertram
YEAR BUILT…............................................……    1967
HULL MATERIAL....................................................    Wood with FRP overlay.
HULL TYPE..............................................................    Modified-V
HULL LENGTH. ..................................................... †    63' Feet  0" inches.
BEAM .................................................................... †    16' Feet  4"inches.
DRAFT..................................................................... †    4'  Feet  0" inches.
DISPLACEMENT .................................................... †    77,000 Lbs.
NET TONS ............................................................ †††     38 Tons.

Surveyed by  Global Yacht & Ship  Surveyors 2462 Coral Way Miami, Florida 33145
Ph. (305) 860-6999 / Fax (305) 858-4537 / GMSHIP@BELLSOUTH.NET

# II.  GENERAL INFORMATION

SURVEY PREPARED FOR:  Lazaro Ponce De Leon
1340 S.W 74 AVE # Rear
Miami, Florida 33144 – 5340

| | |
|---|---|
| FILE NUMBER………………………………… | 2468925 |
| NAME OF VESSEL …………………………… | "SEA SCAPE" |
| TYPE OF SURVEY…………………………… | **Underwriter Consideration** |
| **OVERALL VESSEL RATING**…………………… †† | **AVERAGE CONDITION.** |
| **ESTIMATED MARKET VALUE**………………… †† | **$285,000.00** |
| **ESTIMATED REPLACEMENT COST** ………… †† | **$1,700.000.00** |
| HULL IDENTIFICATION NUMBER (HIN)………… | **NT3890 NO332512 AL 3791** |
| U.S. CERTIFICATE OF DOC. OFFICIAL NUMBER ††† | **669980** |
| YEAR/MAKE/MODEL OF VESSEL …………… | 1967 / 63' Bertram |
| . ………………………………………………… | International  Motor Yacht. |
| HAILING PORT………………………………… | Miami, Florida. |
| OWNER'S NAME ……………………………… | Lazaro Ponce De Leon |
| OWNER'S ADDRESS ………………………… | 1340 S.W. 74 Ave |
| ………………………………………… | Miami Florida, 33144-5340 |
| PLACE OF SURVEY ………………………… | port  Isabel texas 78578 |
| ………………………………………………… | 400  wachington street |
| ………………………………………………… | . |
| DATES / TIME OF SURVEY ………………… | Oct. 20th, 2000 / 1000-1600 |
| BUILDER……………………………………… † | Bertram International. |
| PLACE BUILT. ……………………………… † | Yokosuka, Japan. |
| DESIGNER……………………………………† | Bertram |
| YEAR BUILT………………………………… | 1967 |
| HULL MATERIAL…………………………… | Wood with FRP overlay. |
| HULL TYPE………………………………… | Modified-V |
| HULL LENGTH.……………………………… † | 63' Feet  0" inches. |
| BEAM ……………………………………… † | 16' Feet  4"inches. |
| DRAFT ……………………………………… † | 4'  Feet  0" inches. |
| DISPLACEMENT …………………………… † | 77,000 Lbs. |
| NET TONS ………………………………… ††† | 38 Tons. |

# II. GENERAL INFORMATION

PROPULSION SYSTEM............................................    Twin 6 Cylinders Turbos.

MANUFACTURER....................................................    Caterpillar

FUEL TYPE.............................................................    Diesel.

PORT MODEL NUMBER..........................................    D 343 TI

STARBOARD MODEL NUMBER. .........................    D 343 TI

PORT SERIAL NUMBER.........................................    33B1848

STARBOARD SERIAL NUMBER...........................    · 251800

FUEL CAPACITY........................................    †    1,200 Gallons.

AC POWER SHORE POWER SYSTEMS................    120 / 250 VAC  /  50 AMPS

DC POWER .............................................................    12 and 24 volts systems.

GENERATOR SYSTEM...........................................    Dual 12.5 Kw Onan..

FRESH WATER CAPACITY ....................    †    300 Gallons.

INTENDED USE......................................................    Pleasure.

OWNER EXPERIENCE ..........................................    Reportedly experienced.

INTENDED CRUISING AREA................................    Inland, Coastwise & Bahamas


**Note:** No actual measurements or calculations were made by surveyor during inspection, reported measurements and capacities were taken from published sources.

Asterisks  † in this General Information section refers to the source of such information as follows:


    **† Per Manufacturer's Specifications.**
    **†† Refer to Summary and Valuation Section.**
    **††† Per U.S.C.G. Documentation.**

# III. SYSTEMS

### A. HULL AND DECK

**\*HULL CONSTRUCTION:**

TYPE:
> Modified-V, displacement type.

MATERIAL:
> Mahogany double diagonal inner planking, outer hull laid in
> Carvel planked strakes with FRP (Fiber Reinforced Plastic)
> outside overlay.

EXTERIOR HULL:
> White polyurethane paint, with black anti-fouling, bow flares and
> moderate sheer .

PORTLIGHTS:
> Ten (10) all observed serviceable.

BULKHEADS:
> Athwartships reinforcement enhanced by wood bulkheads bonded
> to the hull with FRP (Fiber Reinforced Plastic).

FRAMES / STRINGERS:
> Main hull stiffness provided by sawn wood frames, floor timbers
> and wood longitudinal stringers.  Complete inspection not
> possible due to limited access.
> Appear serviceable where observed.

BILGE:
> Deep bilge area provides the area for most boat systems and
> tankage.   Condition is good and clean.

LIMBER HOLES:
> Appeared clean and unobstructed where sighted.

TRANSOM:
> Reinforced, wood. With transom door.  Observed serviceable.

CHAIN LOCKER:
> Single compartment, drainage is to bilge, size adequate, access
> and condition is excellent, location forward bow.

MOISTURE CONTENT:
> None of significance. Sovergin Moisture Meter.

CONDITION AND DEFICIENCIES:
> The basic and general appearance of the hull exterior reflects
> a good maintenance and care.

# III. SYSTEMS

## *DECK CONSTRUCTION:

### MATERIAL:
Marine plywood with FRP overlay, white polyurethane paint and non-skid surface.

## *HULL-TO-DECK JOINT:

### TYPE:
Partially visible from the forepeak in the chain locker, deck beams are fastened to the clamp and frame heads, additional stiffening appears achieved with a deck shelf fitted on each side of the boat. It appears both bonded and fastened on approx. 8" centers. Bonding elastomeric compound not determined.
Appears serviceable where sighted.

### FASTENERS:
None sighted.

### REINFORCEMENT:
None sighted

## *DECK FITTINGS:

### TOE RAILS:
4" inches wide, teak.

### VENTILATION:
Natural ventilation provided by portlight, windows and hatches topsides and forward deck as well as vents.
Appear adequate.

### SCUPPERS:
Aft and mid deck with scuppers at port and starboard corners.
Drainage is through-topsides. Appear serviceable.

### CHOCKS:
Two stainless steel, located forward bow.
Observed serviceable.

### DECK SURFACE:
FRP overlay, with non-skid surface.
Observed serviceable.

# III. SYSTEMS

**\*DECK FITTINGS (*CONTINUED*):**

> CLEATS:
>> Total of six (6)
>> Observed serviceable.
>
> HAWSE PIPE:
>> Two (2) transom quarters.
>> Observed serviceable.
>
> HATCHES:
>> Three (3) Bomar style aluminum and Plexiglas.
>> Located in forward cabin deck area.
>> Mounting and securing hardware observed serviceable.
>
> LIFE / SAFETY LINES:
>> Aluminum rail stanchions system with coated stainless steel cable.
>> Observed serviceable.
>
> ANCHOR PLATFORM:
>> Platform is teak, with removable anchor bow roller and electric
>> windlass.  Observed serviceable.
>
> DAVITS:
>> None sighted.
>
> SAFETY RAIL SYSTEM:
>> Stainless steel tubular rail and stanchion system surrounds the aft
>> of fly-bridge area.  Observed serviceable.

## *A. SUPERSTRUCTURE*

**\*SUPERSTRUCTURE:**

> MATERIAL:
>> Marine plywood with FRP (Fiber Reinforced Plastic) overlay.
>
> WINDOWS / DOORS:
>> Cabin house side windows are two (2) paneled,) main salon door
>> appear serviceable, with no evidence of leakage observed. No
>> significance moisture is present. (Sovereign Moisture Meter)
>
> SUPERSTRUCTURE HOUSE TO DECK JOINT:
>> Bonded and bolted to hull.
>> Appear serviceable where observed.
>
> JOINERY STRESS:
>> No significant stress cracks sighted.

---

# III.  SYSTEMS

## A. SUPERSTRUCTURE

### *BRIDGE DECK:

MATERIAL:
>    Marine plywood with FRP (Fiber Reinforced Plastic) overlay.

TYPE:
>    Flying bridge with main helm station, without afterdeck overhang
>    aluminum framed light tinted plex-plastic spray shield, aluminum
>    tubular support structure for a blue canvas top and Isinglass
>    enclosure. Observed serviceable.

SOLE:
>    Marine plywood with FRP overlay with molded in non-skid.
>    Observed serviceable.

SEATS:
>    Two (2) white vinyl cushioned captain and companion chairs.
>    Observed serviceable.

COCKPIT:
>    Large and in very good condition with teak covering boards,
>    transom door, to starboard docking control station. Two (2)
>    hatches will access, engine room aft systems and tankage beneath
>    cockpit sole. Observed serviceable.

## B. CABIN INTERIOR

### *INTERIOR APPOINTMENTS:

>    *Note:  A detailed design/layout and cosmetic conditions of the
>    interior of this vessel will not be covered in this report.  It is
>    assumed that owners or representatives are well acquainted
>    about the vessel interior appointments, specific cosmetic
>    conditions and layout.*

JOINERY AND FINISH:
>    In keeping with the traditional attitude of low maintenance, the
>    interior of this vessel's cabin is a blend of rich wood colors, teak
>    bulkheads, and carpeting as cabin sole teak trim drawers and
>    doors.

INTERIOR BULKHEADS:
>    The interior bulkheads were finely fit where sighted.

# III. SYSTEMS

**\*INTERIOR APPOINTMENTS (*CONTINUED*):**

WATER INTRUSION:
   None sighted.
STORAGE AREA:
   The cabinets, drawers, and shelving were well crafted and finely
   fit where sighted.
DOORWAYS AND HATCHES:
   All freely open and close in good serviceable condition.
HEADLINERS:
   Headliners material in the main salon and cabins is an off white
   padded synthetic material.
   Observed serviceable.
FABRIC AND CUSHIONS:
   Good condition.
   Observed serviceable.
WINDOW COVERING:
   None sighted.
CABIN SOLE:
   Carpeting over marine plywood, galley and heads vinyl.
ACCOMMODATION / CABIN FURNISHINGS:
   MASTER STATEROOM:  The fore cabin or master stateroom,
   provides sleeping for two adults on a queen size island berth with
   storage and drawers below, two (2) cedar lighted closets and
   mechanical air conditioning controls and enclosed full head
   compartment.
   GUEST STATEROOM:  The port cabin or guest stateroom
   provides sleeping for two adults on upper / lower berths with
   storage sides and below, and a lighted locker.
   2nd GUEST STATEROOM:  The starboard cabin or 2nd guest
   stateroom provides sleeping for two (2) adults, on upper / lower
   berths with storage below, one lined, lighted hanging locker.
HEADS:
   One (1) located aft of master stateroom to port.
   Observed serviceable.
SHOWER:
   With acrylic shower enclosure, stainless steel fixtures, vinyl sole,
   wood cabinets with oval vitreous lavatories. Bulkheads finished is
   wall covering.  All observed serviceable.

# III. SYSTEMS

**\*INTERIOR APPOINTMENTS (*CONTINUED*):**

    FAUCET FIXTURES:
        The faucet fixtures were operable thought out vessel.
    LIGHT FIXTURES:
        110 AC, cabin lights onboard the vessels were operable.
    TELEVISION:

| | |
|---|---|
| Manufacturer: | Toshiba. |
| Location: | Fore salon. |

    DSS:

| | |
|---|---|
| Location: | Fore salon. |

    AM FM STEREO CASSETTE / DISC:

| | |
|---|---|
| Manufacturer: | Fisher. |
| Location: | Fore salon to starboard. |

    CONDITION AND DEFICIENCIES:
        The basic and general appearance of the housekeeping
        reflects a good maintenance and care.


**\*GALLEY:**

    SINK:
        Wood cabinetry with a dual compartment, stainless rectangular
        shaped sink, drains overboard.
    REFRIGERATOR AND FREEZER:

| | |
|---|---|
| Manufacturer: | Bailey Inox. |
| Model: | Upper & lower. |
| Manufacturer: | Whirlpool. |
| Model: | Side by side. |

    STOVE AND OVEN:

| | |
|---|---|
| Manufacturer: | Modern Maid Inc. |
| Type: | Electric range, three (3) burners with oven |

        Model Number: LCI 522
    DISHWASHER:

| | |
|---|---|
| Manufacturer: | Bailey Inox. |

    ACCESSORIES:
        All appeared serviceable.

# III. SYSTEMS

## C. PROPULSION SYSTEM

**\*MAIN ENGINES:**
**(See Engine Introduction on page No. 2)**

TYPE:
Four (4) stroke, L-6, turbocharged, aftercooled, fresh water-cooled, marine diesel engines.

MANUFACTURER:
Caterpillar

MODEL NUMBER:
Port:       D 343 TA
Starboard:  D 343 TA

SERIAL NUMBER:
Port:       251800
Starboard:  33B1848

HORSEPOWER:
Engines label states:  566 H.P.

NUMBER OF CYLINDERS:
Six (6) in Line configurations.

LABELS AND NOTICES:
Required labels are properly displayed in the engine room.

LUBE TRANSFER:
A pump system connected to assist system sighted aft center engine room.

INSULATION:
Observed serviceable.

THROTTLE CONTROLS:
Morse mechanical lever/cable type.

LUBRICATION:
Filters: Engine mounted spin on/off type.

ENGINE MOUNTS AND BEDS:
Main engine beds are heavy longitudinal stringers inboard and outboard.  In conjunction, adjustable motor mounts are bolted to the stringers and are used to adjust the prop shaft alignment as well as secure the engines to the hull stringer structure.

VENTILATION:
Power blower with flex tubing, appears adequate.

# III. SYSTEMS

**\*MAIN ENGINES** *(CONTINUED)***:**

EXHAUST SYSTEM:
Raw water-cooled 6" inch with frame supports. Flexible hose aft to FRP silencers located under the aft bunks. Exiting at FRP through-hull at transom quarters. Hose to pipe connections are double clamped where sighted and appear serviceable.

ENGINE ALARMS:
Low oil pressure alarm and coolant over heat warning are visual and audible at the helm station. Appear serviceable.

**\*COOLING SYSTEMS:**

TYPE:
Closed reservoir type cooling with raw water-cooled exhaust.

RAW WATER STRAINERS:
Groco style bronze alloy with side glass.
Observed serviceable.

COOLANT LEVEL:
Normal.

BELTS AND PULLEYS:
Belts and pulleys appear in serviceable condition.

SEACOCKS:
Raw water intakes as well as all through-hulls connected to shut on/off valves are bronze alloy seacocks.

Surveyed by Global Yacht & Ship Surveyors. 2462 Coral Way. Miami, Florida. 33145
Phone (305) 860-6999 / Fax (305) 858-4537 / GMSHIP@BELLSOUTH.NET

# III. SYSTEMS

## *C. PROPULSION SYSTEM*

**\* TRANSMISSIONS:**
### *(See Introduction, page 2)*

MANUFACTURER:
   Twin Disc.
MODEL NUMBER:
   Port : MG 514
   Stbd.: MG 514
TYPE:
   Reversing clutch type with reduction gears.
DRIVE TYPE:
   V-Drive.
GEAR RATIO:
   Tag states: 2 to 1
FLUID LEVEL AND CONDITION:
   Level normal.
CONTROLS:
   Morse mechanical cable and linkage.
   Tested serviceable during run trial.
PROP SHAFT:
   Size:  2" Inch.
   Material:  Stainless steel.
COOLER:
   External engine mounted raw water heat exchanger.
   Observed serviceable.
GEAR ALARM:
   None sighted.
CONDITION AND DEFICIENCIES:
   The general appearance of main engines and gears is
   excellent due to a premium maintenance and care.

# III. SYSTEMS

## *D. ELECTRICAL SYSTEMS*

### *D.C. SYSTEM:

VOLTAGE:
> Lead acid battery powered 12 and 32 volts systems.

BATTERIES:

#### *B1

> Type:  Marine.
> Condition:  Port and Stbd. bank observed serviceable.
> 1)  The positive (hot) battery terminals are not properly covered.
> 2)  Batteries are not properly secured.

BANKS:
> Number: Four (4) batteries tapped separately for 12 and 32-volt systems.
> Location: Port and starboard aft engine room.

MAIN BATTERY SWITCHES:
> Type:  Two (2) rotary selector switches.

PANELS DC:
> Overcurrent Protection:  Circuit breakers.
> Number of breakers: Twelve (12) individually switched branch breakers.
> Location:  Main electrical panel Access:  Serviceable.

TYPE CONNECTORS:
> Round Lugs:  Captive type Condition:  Serviceable

ROUTING  /  SUPPORT:
> Well supported and secured where sighted.

CHARGING SYSTEMS:
> Diesel engines, and diesel generators.

BATTERY CHARGER:
> Model Type:      Consta-Volt Automatic Marine Charger.
> Model:             45E 30 16L
> Observed serviceable.

# III. SYSTEMS

### D. ELECTRICAL SYSTEMS

**\*A. C. SYSTEM:**

SHORE POWER INLET:
Number: Total of six (6)
Location: Side-deck Pilot House area, port and starboard.
Weather Protected:Yes. Standard Hubble stainless steel with cap.
Rating: 120 VAC, 50 amp., 240 VAC, 50 amps.

SHORE POWER:
Cord: Two (2) Approx. 50' long.
Vinyl: Yes, Marine graded. / Cablemaster: None sighted.
Condition: Appear serviceable.

AC SOURCE SELECTOR SWITCH:
Switch type: Manual selector type.
AC Shore / Generator: Manual selector switch for shore or ship power.
Location: Main AC Distribution Panel, pilothouse.

MAIN BREAKERS:
Number: Two (2) 220 V / Rating: 50 amp.
Location: Main AC Distribution Panel.

BRANCH BREAKERS:
Number: Twelve (12) individually switched branch breakers.

CIRCUIT LOAD MONITORS:
One (1) AC volts one (1) amperes meters sighted at main AC panel.
Appear serviceable.

WIRE TYPE:
Size and Rating:
Where sighted, appears serviceable for intended use.

ROUTING:
Well routed and supported where sighted.

OUTLETS:
Various A.C. outlets available throughout yacht appear adequate and conveniently located.

POLARITY:
Checked on all outlets, polarity normal.

# III. SYSTEMS

**\*GENERATORS:**

*(See Engine Introduction on page No. 2)*

MANUFACTURER:
> Onan.

NUMBER OF UNITS:
> Two (2)

FUEL TYPE:
> Diesel.

KILOWATT RATING:
> 12.5 kW.

VOLTAGE RATING:
> 110 / 240 AC

STARTING SYSTEM:
> Geared 12 volt starter with glow plugs.

LOCATION:
> Generator room is beneath galley.

DRIP PAN:
> Appear serviceable.

COOLING SYSTEM:
> Closed coolant and raw water exhaust type.

RAW WATER INTAKE VALVE:
> Raw water intakes as well as all through-hulls connected to shut
> on/off valves are bronze alloy seacocks.
> Observed serviceable.

RAW WATER STRAINER:
> Perko bronze alloy type with sight glass.
> Appears serviceable.

INSULATION:
> None sighted.

FUEL SUPPLY:
> With separate filters and lines, and manifold with operable ball
> type shut off valves.
> Observed serviceable.

FUEL FILTER:
> Remote Racor filter/water separator model number 500 MA
> element part number 2040 SM and engine mount spin on / off
> type.  Both appeared serviceable.

---

# III. SYSTEMS

**\*GENERATORS** *(CONTINUED):*
          *(See Engine Introduction on page No. 2)*

          LUBRICATION SYSTEM:
                    Engine mounted mechanical oil pump.
          FLUID LEVELS:
                    Observed serviceable.
          EXHAUST SYSTEM:
                    Vernalift type Mufflers. Wet Exhaust.


### *E. FUEL SYSTEMS*

**\*FUEL TANKS:**

          <u>Note</u>: *Fuel and Water tanks were visually  inspected where accessible and appear to be sound. No obvious leakage was noted, however, the tanks were not full at time of inspection.*
          *The tanks should be filled with their appropriate liquid, checked under full tank status and pressure tested to attest for their condition.*


          FUEL TYPE:
                    Diesel
          MATERIAL:
                    Aluminum.
          NUMBER OF TANKS:
                    Four (4).
          TANKS CAPACITY:
                    Reportedly 1200 gallons.
          SECURED:
                    Bonded to hull. Appear serviceable where sighted.
          FILL PIPE LOCATIONS:
                    Topside deck, mid-ship port and starboard.
          FILL PIPE MATERIAL:
                    Type B1 USCG hose. Appear serviceable.
          FILL PIPE GROUNDED:
                    Not sighted due to access.
          FILL DECK FITTINGS:
                    Are marked as to fuel type. (DIESEL)
          HOSES CONNECTIONS, CLAMPS:
                    Appear serviceable where sighted.

Surveyed by Global Yacht & Ship Surveyors. 2462 Coral Way. Miami, Florida. 33145
Phone (305) 860-6999 / Fax (305) 858-4537 / GMSHIP@BELLSOUTH.NET

# III. SYSTEMS

**\*FUEL TANKS** *(CONTINUED):*

        FUEL LINES AND FITTINGS:
            Metal and flexible reinforced hose from tanks to filters, pumps
            and engines. Both supply and return are U.S.C.G. type A 1 with
            copper alloy fittings. Appears serviceable.

        VENT LOCATIONS:
            Mid-ship topsides.

        SHUT-OFF VALVES:
            At tanks and central manifold valves.

        FUEL FILTERS:
            Remote mounted dual Racor fuel filters and water separator,
            Model 500MA.  Also engine mount spin on/off type.
            Filters and fuel condition appear serviceable.

        FUEL COOLER:
            None sighted.

        FUEL MANIFOLD VALVES:
            **Surveyor recommends a sketch of the manifold system be
            kept on board with ships papers.**

### *F. FRESH WATER SYSTEM*

**\*POTABLE WATER:**

        STORAGE TANKS:
            Two (2) main ships tank.

        MATERIAL:
            Aluminum.

        CAPACITY:
            Reportedly 200 gallons ships water.

        ACCESS:
            Access to tank and valves is adequate.

        FILL PIPE LOCATION:
            Topside deck port and starboard. Observed serviceable.

        VENT PIPE LOCATION:
            Mid-ship topsides.

        PRESSURE PUMP:
            Demand type. Tested serviceable.

        HOSES AND CLAMPS:
            Cooper and plastic tubing and fittings throughout vessel.

Surveyed by Global Yacht & Ship Surveyors. 2462 Coral Way. Miami, Florida. 33145
Phone (305) 860-6999 / Fax (305) 858-4537 / GMSHIP@BELLSOUTH.NET

# III. SYSTEMS

## *G. SANITATION*

### *BLACK WATER:

NUMBER OF HEAD:
      One (1)
MANUAL AND OR ELECTRIC PUMPS:
      Heads are electric operated for flush.
U.S.C.G. SYSTEM TYPE: MARINE SANITATION DEVICE
(MSD):
      Certification Type: Holding Tank
      **U.S.C.G. MSD Type III.**
      Macerator: Yes, and electrical treatment.
RAW WATER SUPPLY AND CLAMPS:
      The raw water supply are seacocks, are operable and double
      clamped.
DISCHARGE HOSES AND CLAMPS:
      The head discharge hose at the outboard end are seacocks
      are double clamped and appeared serviceable.

## *H. STEERING*

### *STEERING SYSTEM:

TYPE:
      Type: Hydraulic, where sighted appeared serviceable.
NUMBER OF STATIONS:
      One (1)
LINES AND FITTINGS:
      Metal, rubber with metallic fittings. Appear serviceable.
LOCATIONS:
      Flybridge helm station.
ACTUATOR CYLINDER:
      Appears serviceable.
MOUNTING:
      Cylinder and ram actuator are well secured.
RUDDER STOCK:
      Stainless steel rudder stock, size not determinate.
RUDDER SHAFT PACKING:
      Bronze hex nut type packing gland.

# III. SYSTEMS

## *I. GROUND TACKLE*

**\*ANCHOR SYSTEMS (GROUND TACKLE):**

ANCHORS:
- Number:      Two (2)
- Type:        Danforth, Model: 60H
- Locations:   Forward deck anchor platform and deck chocks.

LINE CONSTRUCTION:
Several lines 5/8" marine graded, storage at cockpit, port and starboard storage compartments.
All appear serviceable.

CHAIN:
Approx. 200' feet of G3 ¼" BBB type.

WINDLASS:
- Type:        Electric.
- Mounting:    Secured.

## *J. ELECTRONICS / NAVIGATION EQUIPMENT*

**\*EQUIPMENT:**

VHF:
- Number of units:   Two (2)
- Location:          Flybridge.

SSB:
- Manufacturer:   Harris.
- Model:          RS 230M
- Location:       Flybridge.

AUTOHELM
- Manufacturer:   Raytheon.
- Model :         650
- Location:       Flybridge.

RADAR:
- Manufacturer:   Raytheon.
- Model :         R 85
- Location:       Flybridge.

ELECTRONIC CHARTING:
- Manufacturer:   Raytheon.
- Model :         630
- Location:       Flybridge.

# III. SYSTEMS

**ELECTRONICS / NAVIGATION EQUIPMENT *(CONTINUED)*:**

COLOR ECHO SOUNDER:
Manufacturer:      JRC.
Model :            F 50
Location:          Flybridge.

COMPASSES:
**Note:** *If detailed accuracy of the compasses is desired, it is recommended that a qualified compass adjuster be engaged to compensate the compasses and compile deviation cards.*
Manufacturer:      Danforth.
Model:             Constellation.
Location:          Flybridge.
Appears serviceable.

ANTENNAS:
All appear serviceable

# III. SYSTEMS

## K. THRU-HULLS

**Note:**

The owner/captain is advised to make himself very familiar with all above and below water line through hull fittings and associated clamps and hoses. It is further advised that a drawing or schematic be kept onboard for ready reference as to the type of valve location, application, and its condition. It is also recommended that all below water line through hull penetrations be monitored frequently for both operation and condition. Each below water line through hull valve should be an operable seacock and have double clamped hose connections. It is recommended that a tapered wooden plug be attached to each below water line through hull valve to use as an emergency plugging device.

## L. BONDING SYSTEM

### *MAIN BONDING SYSTEM:

MAIN BONDING CONDUCTOR:
There is a proper main bonding conductor on the vessel.
THRU-HULL FITTINGS:
The thru-hull fittings as well as all sighted underwater fittings are properly bonded.
SHAFTS AND SHAFT LOGS:
The propeller shafts are bonded.
RUDDER SHAFT LOGS:
Rudder shafts and rudder shaft logs appear to be bonded.
ENGINES AND GENERATORS:
Appear to be bonded and grounded.
ZINCS:
Zincs tied into bonding system.

# III. SYSTEMS

## M. SAFETY EQUIPMENT

### *UNITED STATES COAST GUARD REQUIRED:

NUMBER AND TYPE OF PFD'S:
>Ten (10) Type II - U.S.C.G. approved. Located at fly bridge.

THROWABLE PFD'S:
>One (1) Type IV-U.S.C.G. approved throwable devices.

FIRE EXTINGUISHERS:
>Six (6) B:C type hand held fire extinguishers found on board.
>All observed serviceable.

FLARE KITS VDS *(VISUAL DISTRESS SIGNALS):*

>**\*A1**
>Day/night visual distress signals are hand held flares.
>None sighted on board.

SOUND DEVICES:
>Air Horn: Tested compressed air horn.  Operable.

POWER EXHAUST BLOWERS:
>Yes, operable.

NAVIGATIONAL LIGHTS:
>Navigational lights and all around white lights are operable.

"NO OIL DISCHARGE" PLAQUE:
>Yes. Properly displayed in both engine rooms.

"NO TRASH DUMPING" PLAQUE:
>Yes. Properly displayed.

WASTE MANAGEMENT PLAN:

>**\*C1**
>None sighted.

FCC STATION LICENSE *(IF VHF RADIO EQUIPPED):*
>**Note:**   The FCC issued an interim rule, temporarily eliminating
>the VHF radio station-licensing requirement, effective April 12,
>1996  (Pleasure boats under 20 meters in length only.)
>Licenses are still required for SSB, Satcom or Telegraphy.

FCC OPERATORS LICENSE:
>**Note:**   Must provide F.C.C. operator license to comply with
>U.S.C.G. regulations if the radio is operated out of U.S. waters.
>Information.

# III. SYSTEMS

**SAFETY EQUIPMENT** *(CONTINUED):*

---

**\*BILGE PUMPS:**

| TYPE | MODEL | LOCATION | CONDITION |
|------|-------|----------|-----------|
| Rule Submersible | 1500 | Aft engine room | Tested operable. |
| Rule Submersible | 1500 | Aft engine room | Tested operable. |
| Rule Submersible | 1500 | Aft bilge | Tested operable. |
| Rule Submersible | 1500 | Mid bilge | Tested operable. |

An emergency belt driven bilge pump on the starboard engine with compartment manifold.

---

**\*AUXILIARY SAFETY EQUIPMENT:**

LIFE RAFT:
None sighted. / **Recommended for offshore passage making.**
E.P.I.R.B.:
None sighted. / **Recommended for offshore passage making.**
SMOKE DETECTOR:
None sighted  /   **But highly recommended.**
FIRE ALARM:
None sighted  /   **But highly recommended.**
FIXED FIRE EXTINGUISHING SYSTEM:
None sighted  /   **But highly recommended.**
SEARCH LIGHTS:
None sighted. /   **But highly recommended.**
FIRST AID KIT:
None sighted. /   **But highly recommended.**
HIGH BILGE WATER ALARM:
None sighted. /   **But highly recommended.**
FUME SNIFFER ALARM SYSTEMS:
None sighted. / **Carbon monoxide fume detector alarm systems are highly recommended.**

**Surveyor recommend all safety equipment systems shall be serviced and monitored frequently.**

---

# III. SYSTEMS

### N. AIR CONDITIONING AND HEAT

**\*AIR CONDITIONING AND HEATING:**

TYPE:
> Split system / Reverse Cycle.

MANUFACTURER:
> Cruisair.

NUMBER OF UNITS:
> Four (4)

LOCATION:
> Fore engine room.

CONTROLS:
> Cruisair mechanical, all appeared serviceable.

RAW WATER INTAKE VALVE AND STRAINER:
> Valve is a bronze alloy seacock, strainer is Perko bronze alloy type with sight glass. Water intake seacock and strainer are double clamped.

HOSES, CLAMPS AND CONNECTORS:
> Appear to be adequately sized and serviceable for application were sighted.

RAW WATER COOLING PUMP:
> 110 volt electric pumps systems are equipped with a seacock and a Perko sea strainer assemblies.
> Appears serviceable for application were sighted.

# IV. Finding and Recommendations

Deficiencies noted under **"SAFETY"** should be addressed before vessel is next underway. These findings represent an endangerment to personnel and/or the vessel's safe and proper operating condition. Findings may also be in violation of U.S.C.G. regulations.

Deficiencies noted under **"IMMEDIATE ATTENTION"** should be corrected in the near future so as to maintain standards and to help the vessel to retain its value.

Deficiencies will be listed under the appropriate heading:

        **A.**    **SAFETY DEFICIENCIES**
        **B.**    **DEFICIENCIES NEEDING IMMEDIATE ATTENTION**
        **C.**    **SURVEYORS NOTES AND OBSERVATIONS**

### *FINDINGS AND RECOMMENDATIONS*

### *A. SAFETY DEFICIENCIES

**\*A1 (Page 24)**
**No VDS (Visual Distress Signals) sighted on board.**
*Comply with U.S.C.G. regulations, provide approved VDS.*
*CFR 175.125*

### *B. DEFICIENCIES NEEDING IMMEDIATE ATTENTION

**\*B1 (Page 15)**
**1)  The positive (hot) battery terminals are not properly covered.**
**2)  Batteries are not properly secured.**
*1)  Properly cover (hot) battery terminals to bring up to ABYC E-9.*
*2)  Appropriately secure batteries.*

### C. SURVEYORS NOTES AND OBSERVATIONS

**\*C1 (Page 24)**
**No Waste management plan sighted on board.**
*Provide a written waste management program on vessel per U.S.C.G.*
*regulations for vessels over 40 feet in length.*

*This can be as simple as :*
*All vessel refuse is placed in trash bags which are stored on board until*
*they can be disposed off ashore.*
*The person in charge of carrying out this plan is:_____.*

---

# V. SUMMARY AND VALUATION

## A.    STATEMENT OF OVERALL VESSEL RATING OF CONDITION

It is the surveyor's experience that develops an opinion of the **OVERALL VESSEL RATING OF CONDITION** After a the survey has been completed and the findings have been organized in a logical manner.

The grading of condition, developed by **BUC RESEARCH**, and accepted in the marine industry, for a vessel at the time of survey, determines the adjustment to the range of base values in the *BUC USED BOAT PRICE GUIDE*, for a similar vessel sold within a given time period, as a consideration to determine the Market Value.

The following is the accepted marine grading system of condition:

**"EXCELLENT (BRISTOL) CONDITION"**, is a vessel that is maintained in mint or bristol fashion - usually better than factory new - loaded with extras - a rarity.

**"ABOVE AVERAGE CONDITION"**, has had above average care and is equipped with extra electrical and electronic gear.

**"AVERAGE CONDITION"**, ready for sale requiring **no** additional work and normally equipped for her size.

**"FAIR CONDITION"**, requires usual maintenance to prepare for sale.

**"POOR CONDITION"**, substantial yard work required and devoid of extras.

**"RESTORABLE CONDITION"**, enough of hull and engine exists to restore the boat to useable condition.

As a result of my investigation, as shown in the *SYSTEMS AND FINDINGS AND RECOMMENDATIONS* section of this **REPORT OF SURVEY**, and by virtue of my experience, my opinion is

## OVERALL VESSEL RATING : <u>"AVERAGE CONDITION"</u>

# V. SUMMARY AND VALUATION

## B.    STATEMENT OF VALUATION

1.      The **"FAIR MARKET VALUE"** is the most probable price in terms of money which a vessel should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.

Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

   a.      Buyer and seller are typically motivated.

   b.      Both parties are well informed or well advised, and each acting in what they consider their own best interest.

   c.      A reasonable time is allowed for exposure in the open market.

   d.      Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

   e.      The price represents a normal consideration for the vessel sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

Therefore, after consideration of the reliability of the data, the extent of the necessary adjustments and condition of the vessel, it is your surveyor's opinion the **"FAIR MARKET VALUE"** of the subject vessel is:

**$ 285,000.00**
*Two Hundred Eighty Five Thousand Dollars.*

2.      The **"ESTIMATED REPLACEMENT COST"** indicates the retail cost of a new vessel of the same make/model with similar equipment offered by the same manufacturer. **"ESTIMATED REPLACEMENT COST"** of the subject vessel is:

**$ 1,700,000.00**
*One Million Seven Hundred Thousand Dollars.*

# V. SUMMARY AND VALUATION

## C.    SUMMARY

In accordance with the request for a marine survey of the vessel **"SEA SCAPE"** for the purpose of Underwriters Consideration, estimating its Fair Market Value and Replacement Cost, I herewith submit my conclusion based on the preceding report. The subject vessel was personally inspected by the undersigned on October 20th, 2000 and was found to be a well constructed, appointed and comfortable vessel. The vessel is very capably captained and well-kept. Other than the discrepancies noted in the body of the report, the **"SEA SCAPE"** is considered to be *"Fit For Its Intended Service and Suitable For Its Intended Use"* of Coastal Recreational Cruising.

## D.    SURVEYOR'S CERTIFICATION

I certify that, to the best of my knowledge and belief:

> *The statements of fact contained in this report are true and correct.

> *The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, unbiased professional analyses, opinions, and conclusions.

> *I have no present or prospective interest in the vessel that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

> *My compensation is not contingent upon the reporting of a predetermined value or direction in value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulate result, or the occurrence of a subsequent event.

> *I have made a personal inspection of the vessel that is the subject of this report.

This report is submitted without prejudice and for the benefit of whom it may concern.

ATTENDING SURVEYOR:    _____
Gilberto Medina, A.M.S.

# "SEA SCAPE"





Surveyed by Global Yacht & Ship Surveyors, Inc.  2462 Coral Way.  Miami, Fl. 33145
Phone (305) 860-6999 / Fax (305) 858-4537

# "SEA SCAPE"





Surveyed by Global Yacht & Ship Surveyors, Inc.  2462 Coral Way,  Miami, Fl. 33145
Phone (305) 860-6999  / Fax (305) 858-4537

# "SEA SCAPE"





Surveyed by Global Yacht & Ship Surveyors, Inc. 2462 Coral Way. Miami, Fl. 33145
Phone (305) 860-6999 / Fax (305) 858-4537

# "SEA SCAPE"





Surveyed by Global Yacht & Ship Surveyors, Inc.  2462 Coral Way.  Miami, Fl. 33145
Phone (305) 860-6999 / Fax (305) 858-4537

# GLOBAL YACHT & SHIP SURVEYORS
### 2462 CORAL WAY
### MIAMI, FLORIDA.  33145
### PHONE (305) 860-6999
### FAX (305) 858-4537

October 18, 2000

Mr. Lazaro Ponce de Leon

1340 S. W. 74 Ave # Rear

Miami, Florida 33144-5340.


*RE: Bertram International 63" Cockpit Motor Yacht   "SEA SCAPE"*


STATEMENT OF SERVICES:


Condition & Value Survey                   63'  Flat rate                    $560.00




**TOTAL..............................$ 560.00**




**THANK YOU !!!**



American Boat & Yacht Council
Society of Accredited Marine Surveyors

**"EXHIBIT B"**

## "EXHIBIT B"
## TO
## MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT

| THE STATE OF TEXAS | § | |
|---|---|---|
| | § | **AFFIDAVIT OF LUIS PONCE DE LEON** |
| COUNTY OF HIDALGO | § | |

BEFORE ME, the undersigned Notary Public, on this day personally appeared **Luis Ponce de Leon**, who being by me here and now duly sworn upon oath, says:

"My name is Luis Ponce de Leon. I am over the age of eighteen (18) years and am not disqualified to make this affidavit. I am the son of Lazaro Ponce de Leon and have been appointed as Administrator of his estate by the Cameron County Court at Law No. 3 on May 21, 2001. My father died on April 5, 2001 while in Havana, Cuba and was cremated there.

"During the year 2000, my father bought a sixty-three (63') foot Bertram Yacht in Freeport, Texas for Fifty-five Thousand and no/100ths ($55,000.00) Dollars and began to restore that boat at the Freeport Yacht Services shipyard. While he was working on the boat in Freeport, I was on site about fifty (50%) percent of the time giving my assistance to the extent I was able.

"After the boat renovation was complete, my father motored down the coast of Port Isabel, Texas. Either on this trip or during further sea trials, the boat sustained damage to the propeller, propeller shaft and shaft strut and was hauled from the water

**"EXHIBIT B"** - AFFIDAVIT OF LUIS PONCE DE LEON
to Motion for Summary Judgment and Brief in Support
TF/bgw  #011087  L:\WARNKE\CLIENT\Ponce\USDC-Brnsv'le\1Aff-deLeon.wpd

Page 1 of 4

EXHIBIT NO. B

at Zimco Marine, Inc., a shipyard in Port Isabel. I personally was aboard the ship while on the railway at Zimco Marine, Inc. and was there when Gilberto Medina conducted a survey of the boat for value and condition.

"After the survey was conducted by Mr. Medina, I assisted my father in completion of an application for insurance on the ship because of my father's limited proficiency in the English language. The application and a copy of the survey was provided to Paul Lynch and Associates, Inc. of Jensen Beach, Florida for the purchase of insurance. After application, Insurance Company of the West issued Policy Numbered MYA0000652 to my father insuring the boat and agreeing to pay for damages as set out in the policy of insurance. The coverage for hull and machinery was Two Hundred Eighty-five Thousand and no/100ths ($285,000.00) Dollars which was the amount Mr. Medina gave as the fair market value of the boat.

"After my father received word that the policy of insurance had been issued and then received a copy of the policy in January 2001, he conducted tests and sea trials with the boat, and afterward he and I left Port Isabel, Texas for the Caribbean Sea. We traveled down the coast of Mexico until we reached the Gulf of Campeche and then went around the Yucatan Peninsula until we reached Belize. During this trip, we had no problems with the boat nor any incidences involving the boat. After reaching the Caribbean Sea, we went to the Chinchorro banks to dive and spear fish. On March 1, 2001, my father and I awoke and made ready to weigh anchor for Manahual, State of Quintana Roo, Mexico to refuel and reprovision. During this trip,

*"EXHIBIT B"* - **AFFIDAVIT OF LUIS PONCE DE LEON**
**to Motion for Summary Judgment and Brief in Support**
TF/bgw #011087 L:\WARNKE\CLIENT\Ponce\USDC-Brnsv'le\1Aff-deLeon.wpd

Page 2 of 4

the boat began to run low in the bow and my father went below to investigate. He quickly came back up and told me that the bow was drawing water and the water was almost to the generators. We began trying to reach the Mexican Coast Guard for assistance but never received an answer. I was finally ordered to board the skiff and be prepared to abandon the ship. My father finally left the ship, and we watched it sink in approximately 500 - 600 meters of water.

"We traveled the rest of the way to Manahual in the skiff and made a report of the sinking to the Mexican Coast Guard. We requested and received a form to make a report of loss to the insurance company and made that report on March 2, 2001. Neither my father nor his estate has received any payment from Insurance Company of the West for the loss of the boat."

FURTHER, AFFIANT SAYETH NAUGHT.

**Luis Ponce de Leon**

*"EXHIBIT B"* - AFFIDAVIT OF LUIS PONCE DE LEON
to Motion for Summary Judgment and Brief in Support
TF/bgw  #011087  L:\WARNKE\CLIENT\Ponce\USDC-Brnsv'le\1Aff-deLeon.wpd

Page 3 of 4

STATE OF TEXAS                    §
                                 §
COUNTY OF HIDALGO                 §

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned Notary Public, by the said **Luis Ponce de Leon**, on this, the <u>  12ᵀʰ  </u> day of February, 2003, to certify which WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE.



KAREN BABINEAUX
MY COMMISSION EXPIRES
October 30, 2005

_____
Notary Public, State of Texas.

---

**"EXHIBIT B"** - AFFIDAVIT OF LUIS PONCE DE LEON
to Motion for Summary Judgment and Brief in Support
TF/bgw  #011087  L:\WARNKE\CLIENT\Ponce\USDC-Bmsv'le\1Aff-deLeon.wpd                                    Page 4 of 4

**"EXHIBIT C"**

FROM : APBS                              FAX NO. :                    Oct. 12 2000 09:34AM P3

# VESSEL OWNERS APPLICATION

| Applicant's Name: Lazaro Ponte DeLeon | | Age: 63 | Date: 10-2-00 | Producer Code #: |
|---|---|---|---|---|
| Mailing Address: 13369 NW 2 Terra | | | Producer Name: | |
| City: ~~Miami~~ | State: FL Zip: 53192 | | Producer Address: | |
| Tel. Son/Lewis (w) 305-362-1812 – (h) 305-235-9024 – (c) 956-497-6756 | | | Producer Tel        Fax | |
| Occupation: Owner of Scrap Metal Co. | | | LIENHOLDER INFORMATION | |
| Vessel Name: Sea Scorp | | | Name: | |
| Effective Date: | | | Street: | |
| Laid Up: N/A | | | City:        State:        Zip: | |

| COVERAGES | Sums Insured | EQUIPMENT | | Primary Power | ☐ Sail |
|---|---|---|---|---|---|
| Hull – Physical Damage | $300,000 | ☒ Bilge Pumps | ☒ Aux Gen., Diesel | 32 Y | ☐ Outboard |
| Tender / Dinghy | | ☐ Cooking Stove | ☐ EPIRB | | ☐ Inboard |
| Liability coverage | $500,000 | ☒ Fume Detector | ☒ Engine Alarm | | ☐ Inboard/Outdrive |
| Crew Liability | | ☒ CO2/Halon System | ☒ Life Raft | | ☐ Other |
| Owner/Operator M & C | | ☒ Fire Extinguishers | ☐ Sonar | Type of Hull | ☐ Sailboat |
| Medical Payments | $10,000 | ☐ Anti-Theft Devices | ☒ GPS | wood | ☐ Performance |
| Commercial Passenger Lia. | | ☐ Depth Sounder | ☒ Other: (List Also-Below) Auto Pilot | | ☒ Runabout |
| Uninsured Boater | 10% of P&I | ☒ Radar | ☒ 12 KW Generator | Hull Material | ☒ Wood |
| Trailer | | ☐ Loran/Direction Finder | | | ☐ Metal |
| Personal Property | $2,500 | ☒ Ship To Shore Radio | | | ☐ Fiberglass |
| Non-Emergency Towing | $500 | ☐ SATNAV/OMEGA | | Fuel Tank | ☒ Metal |
| Other | | ☐ Aux Gen., Gas | | 4 | ☐ Fiberglass |

| VESSEL INFORMATION | Year 1967 | Length 63' | Date Purchased 05/2000 | Purchase Price | Present Value $300,000 | Max Speed 22 nots | Registration No. |
|---|---|---|---|---|---|---|---|

Hull Identification No                Manufacturer/Model: Bertram

Stored at :  Marina (name: tbd) located in Port Isabella, Texas  ⟨x⟩ Provide Marina Name + Address

Waters To Be Navigated: Gulf of Mexico – Florida to Texas, including Mexico, Belize, and Cayman Islands

## ENGINE/OUTBOARD MOTOR INFORMATION

| ENG | H.P. | Gasoline | Diesel | Year | Date Purchased | Purchase Price | Present Value |
|---|---|---|---|---|---|---|---|
| 1 | 560 each | | ☒ | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |

| Manufacturer/Model | Serial Number |
|---|---|
| 1 Twin Catapillar D343 | 3351848 |
| 2 | |
| 3 | |

## TRAILER INFORMATION

| | Year | Date Purchased | Purchase Price | Present Value |
|---|---|---|---|---|
| Manufacturer/Model | Serial Number | | | |

Details of Previous Vessels Owned:

## OPERATORS

| # | Name | D.O.B. | Drivers License # | State | S.S. # | USCG/POWER SQUADRON CERTIFCATE |
|---|---|---|---|---|---|---|
| 1 | Lazaro Ponce DeLeon | 1937 | 23-5208 457-0 | FL | 593 437095 | 10+ years boat ownership and exper. |
| 2 | | | | | | |
| 3 | | | | | | |

| # | AUTO VIOLATIONS/SUSPENSIONS IN LAST 5 YEARS | | YEARS OF BOAT OWNERSHIP |
|---|---|---|---|
| 1 | N/A | | 10+ |
| 2 | | | |
| 3 | | | |

EXHIBIT NO. C

FROM : APBS                          FAX NO. :                    Oct. 12 2000 09:35AM  P4

## GENERAL INFORMATION

| # | Explain All "YES" Responses in Remarks | YES | NO | # | Explain All "YES" Responses in Remarks | YES | NO |
|---|---|---|---|---|---|---|---|
| 1 | Is the boat chartered to others with captain? | ☐ | ☒ | 6 | Is the boat used commercially or for business purposes? | ☐ | ☒ |
| 2 | Is the boat chartered to others without captain? | ☐ | ☒ | 7 | Does the applicant employ a paid crew, if yes how many? | ☐ | ☒ |
| 3 | Is the boat used for racing? | ☐ | ☒ | 8 | Was any operator involved in a marine loss in the last 10 years (insured or not)? | ☐ | ☒ |
| 4 | Is the boat used for water skiing or diving? | ☐ | ☒ | 9 | Was any coverage declined, canceled or non-renewed during the last 5 years? | ☐ | ☒ |
| 5 | If the boat is used for fare paying passenger charters, what is the average number of passengers per trip? | | | | # of trips per year? | | |
| 10 | Date of Survey: Forthcoming a.s.a.p. (out of water C&V Survey) | | | | | | |

**REMARKS:** Purchased boat about 5 mos. Ago, have refurbished, painted, etc. Boat has living area, A/C, furnished, etc.

## PLEASE READ BEFORE SIGNING APPLICATION
1. This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained herein.
2. Any misrepresentations in this application for insurance, will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary, by a supplement to the application.
3. A photograph of the vessel is required to be submitted with this application.

## NOTICE:
The normal procedure used by the company to evaluate applications may include obtaining an investigation consumer and credit report involving information on such things as charter, general reputation, personal characteristics and mode of living. Information on the nature and scope of such a report, if one is made, will be given to you upon request.

Signature of Applicant X _____    Date X 10/23/2000

FROM : APBS                              FAX NO. :                    Oct. 12 2000 09:06AM  P2

3388 NE Sugarhill Ave., #201, Jensen Beach, FL  34957                              1
Telephone (561) 232-2552  •  Facsimile (561) 232-2522

10/10/00  13:08  FAX 12322522                    P1A                              ☑02

# Paul Lynch & Associates, Inc.
## *Insurance Consultants & Agents*

### *Lazaro, Ponce De Leon – Insurance Proposal 10-10-00*

| | | | |
|---|---|---|---|
| •Assured: | Lazaro Ponce De Leon /1967 Bertram / Private Pleasure Vessel | | |
| •Hull Value: | $300,000 | Deductible: | $9,000 |
| •P&I Limit: | $500,000 | Deductible: | $Nil |
| •Medical Payments: | $10,000 | Deductible: | $Nil |
| •Personal Effects: | $2,500 | Deductible: | $100 |
| •Towing: | $500 | Deductible: | $Nil |
| •Uninsured Boater: | 10% of P&I | Deductible: | $Nil |
| •Navigating: | Gulf of Mexico – Florida to Texas, including Mexico, Belize and Cayman Islands | | |
| •Homeport: | Port Isabelle, Texas | | |
| •Warranted: | Private Pleasure Use Only | | |

### Annual PREMIUM:  $5,550.00

### Items required to bind coverage:

1. **Signed Application.**
2. **New C&V Survey (out of water) within 10 days of binding + survey compliance letter if any recommendations made.**
3. **Photo of vessel.**
4. **Check for $5,550.00 payable to Paul Lynch & Associates, Inc. or down payment of $1,375.00 + signed Finance Agreement (enclosed).**

*If you wish to bind coverage please sign and date below and return to our office along with the above "required" items via FAX and Mail.*

Buyer's Signature: X _____        Date: X 10/23/2000

Request bound effective date: X 10/23/2000

FROM : APBS                                      FAX NO. :                        Oct. 12 2000 09:36AM P5

## UNIVERSAL PREMIUM ACCEPTANCE CORPORATION
8245 NIEMAN ROAD
LENEXA, KANSAS 66214     Tel. 800-877-7848

This AGREEMENT is made on the date indicated below between the assured and the
above finance company, hereinafter called "THE FINANCE COMPANY" for the financing
of the balance of the premiums on the insurance policies listed herein.

| | | CONTRACT NO. | AGENT |
|---|---|---|---|

INSURED: PONCE DE LEON, LAZARO     721 Ytturia     AGENT: PAUL W L___ 3388 NE S___ VE, STE 201     JENSEN B___     FL 34957-0000
Zip code: ① 78578     AGENT COD___     852,553-XX00F     P9.50 V4.1.3
PORT ISABELLE     TX     CK RE 10____00
Email: gb003@hotmail.com     Phone# (561) 232-2552     S.S.#
Phone# 956-497-6756     Fax#

| CO CODE | NAME OF INSURANCE CO AND ADDRESS OF BRANCH OFFICE | PREMIUM AMOUNT | POLICY NUMBER | INCEPTION | EXPIRATION | TYPE COVG | Draft or Chk Number | Amount |
|---|---|---|---|---|---|---|---|---|
| | INSURANCE CO OF SAN DIEGO CA PACIFIC UNDERWR PORTLAND OR | 5,500.00 | UNASSIGNED | | | HUL | | |

## FEDERAL TRUTH-IN-L___ DISCLOSURE STATEMENT

| CASH PRICE (Total Premium) | CASH DOWN PAYMENT ② Due at inception | UNPAID BALANCE OF CASH PRICE | AMOUNT FINANCED The Amount of Credit provided to you or on your behalf. | FINANCE CHARGE The Dollar ___ the Credit ___ you | TOTAL OF PAYMENTS Amount you will ___ paid after you ___ made all payments ___ scheduled. | ANNUAL PERCENTAGE RATE The Cost of your Credit as a Yearly Rate. |
|---|---|---|---|---|---|---|
| 5,500.00 | 1,375.00 | 4,125.00 | 4,125.00 | 350___ | ___4. .88 | 19.980% |

YOUR PAYMENT SCHEDULE
③ Amount of Each Payment $ 497.32     ___ments     When Payments Are Due Day of Month    30

Each of the monthly payme___ ___ day of each succeeding month until paid in full.

PREPAYMENT:    If you pay off e___, you will not have to pay a penalty and you may be entitled to a refund of part ___ ___ge.
SECURITY:    You are giving se___ty interest in any and all unearned return premiums which may become pay___ ___ ___
LATE CHARGE:    If a payment is late you will be charged a late charge of 5% of scheduled payments.
See the following provisions for addition___ information about nonpayment default, any required payment in full before the ___ ___repayment refunds
and penalties.

## THE ABOVE INFORMATION REPRESENTS YOUR ITEMIZATION AND D___ ___URE

FOR VALUE RECEIVED, the undersign___ assured promises and agrees to pay to the order of THE FINANCE ___ ___ ___ ___ of     $4,575.88
(being the total of payments of above) ___suant to al of the provisions contained on both sides of this agreement ___ ___ncorporated herein.

NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLA___ ___OU ARE ENTITLED TO A COMPLETELY
FILLED-IN COPY OF THIS AGREEMENT. 2. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ___ ___LL AMOUNT DUE AND UNDER CERTAIN
CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.

THE UNDERSIGNED EXECUTED THIS LOAN AGREEMENT AND RECEIVED A COPY TH___ ___ ___ DAY OF ___ ___
SIGNATURE OF INSURED (if C___ ___ficer Signing)
Policy will be cancelled for Non-Pa___ rent

X _____     X ___
ASSURED     ___ASSURED

AGENT'S NOTE: The undersign___ agent ___by certifies that all policies listed above hereof have been issued and delive___ ___ ___ that the down payment as shown in the ___ ___et
has been paid by or on behalf of the assu___d, and that all policies listed therein were issued by this agency. The Undersig___ ___ ___ above contract evidences a bona fide ___ ___al
transaction; that the insured is of legal age ___ has capacity to contract, that the signature is genuine and that he has delive___ ___ ___ ___ ___ct to the assured. The agent further a___ ___ ___ ___
tions of the above policies listed hereon con___in an audit or reporting form unless otherwise shown where provided.     ___EACH

☐ POLICY SUBJECT TO AUDIT     ___ ___TIONAL PREMIUM MARK
SIGNATURE OF BROKER OR AGENT     FORM 865TX     ___CENTER OF BOX

# Paul Lynch & Associates, Inc.
## Insurance Consultants & Agents

10-20-00

Attn: Lewis

Fax: 956-574-9672

Additional Underwriting Terms

---

<u>Navigating:</u>

Gulf of Mexico ~~the~~ West Coast FL to Brownsville Texas including Mexico, Belize, Yucatan + Cayman Islands, excluding Cuba, Columbia + Haiti.

~~Vessel~~ when on voyage warranted vessel not left unattended, warranted marine based with caretaker in charge when owner away from vessel.

Named Windstorm Deductible: $15,000

X _____
Insured's Signature

10/23/2000
Date

3388 NE Sugarhill Avenue, Suite 201, Jensen Beach, FL 34957
Telephone (561) 232-2552  •  Facsimile (561) 232-2522

**"EXHIBIT D"**

JUL-12-2001 08:58 AM                                                                         P.01



**SINCE 1934**

# Pacific Underwriting Professionals
### Portland, Oregon 97232

## YACHT INSURANCE POLICY

**RENEWAL OF:** **NEW**                           **NUMBER:** **MYA0000652**

## DECLARATIONS

**NAMED ASSURED:**   **LAZARO PONCE DE LEON**
**13369 NW 2 TERRA**
**MIAMI, FL 33182**

**POLICY PERIOD: FROM**   **11/15/2000**   **TO**   **11/15/2001**   NOON STANDARD TIME AT PLACE OF ISSUANCE

### DESCRIPTION OF YACHT

| YEAR BUILT: | 1967 | NAME: | "SEA SCAPE" |
|---|---|---|---|
| LENGTH: | 63 FT | CONSTRUCTION: | WOOD |
| BUILDER: | BERTRAM YACHT | VESSEL TYPE: | CRUISER |
| | | OFFICIAL NUMBER: | NT3890 NO332512 AL3791 |

**LOSS IF ANY PAYABLE TO THE ASSURED AND:** OR ORDER

**LIMITS OF NAVIGATION:**   PERMISSION IS GRANTED FOR ONE-WAY TRIP FROM PORT ISABELLA, TX TO CAYMAN ISLANDS. THEREAFTER WARRANTED VESSEL WILL NAVIGATE WATERS OF CARIBBEAN SEA, INCLUDING WEST COAST OF CENTRAL AMERICA AND LESSER ANTILLES, NOT EAST OF 68 DEGREES WEST LONGITUDE, AND EXCLUDING CUBA, COLOMBIA, HAITI, GREATER ANTILLES, STRAITS OF FLORIDA AND THE GULF OF MEXICO. FURTHER WARRANTED THAT VESSEL WILL NOT BE LEFT UNATTENDED WHILE ON EXTENDED VOYAGES AND THAT VESSEL WILL BE IN CHARGE OF CARETAKER WHILE MARINA BASED AND OWNER IS AWAY.

| COVERAGES | AMOUNT OF INSURANCE | DEDUCTIBLE | PREMIUM |
|---|---|---|---|
| HULL & MACHINERY | $      285,000 | $      8,550 | $      5,400 |
| PROTECTION & INDEMNITY | $      500,000 | $      NIL | $      150 |
| MEDICAL PAYMENTS | $      10,000 | $      NIL | $      INCLUDED |
| PERSONAL EFFECTS | $      2,500 | $      100 | $      INCLUDED |
| TOWING | $      500 | $      NIL | $      INCLUDED |
| UNINSURED BOATER | $      50,000 | $      NIL | $      INCLUDED |
| TENDER/OUTBOARD MOTOR | $      3,000 | $      150 | $      INCLUDED |
| NAMED WINDSTORM EDT. | $      .... | $      18,000 | $      .... |
| TRIP EDT. | $      285,000 | $      15,000 | $      500 |
| GRAND TOTAL | | | $      6,050 |

COUNTERSIGNED AT PORTLAND, OREGON

BY _____

THIS DECLARATION PAGE WITH THE YACHT INSURING CLAUSES (YACHT-PUP-01 00) NAMED WINDSTORM ENDORSEMENT AND TRIP ENDORSEMENT COMPRISE YOUR POLICY

Page 1 of 2

EXHIBIT NO. D

# Paul Lynch & Associates, Inc.
### *Insurance Consultants & Agents*

1/12/01

Lazaro Ponce De Leon
8725 NW 117 Street, Bay #1
Hialeah Gardens, FL  33016

Re:  Hull Insurance
     Policy No.  MYA0000652

Dear Lazaro:

Enclosed herewith, please find the above referenced policy for the vessel "Sea Scape".

Please review all conditions of this policy very carefully, should you have any questions or require additional information, please feel free to contact me at (561) 232-2552

Respectfully,

Paul W. Lynch

## PUNITIVE OR EXEMPLARY DAMAGES

Notwithstanding anything to the contrary in this policy, this Company will not indemnify the Assured in respect of any liability imposed on the Assured as punitive or exemplary damages, however described, nor will this Company pay directly to any third party any punitive or exemplary damages, however described, awarded against any Assured under this policy.

## CONFORMITY OF STATUE

Any provision in this policy that conflicts with any state statute is hereby amended to conform to the minimum requirements of the state statute.

## NAMED WINDSTORM DEDUCTIBLE CLAUSE

Loss or damage to the insured vessel arising from a <u>NAMED</u> WINDSTORM and occurring within the navigational area as stated on the declaration page shall be subject to a 100% increase in the Hull Deductible which shall apply to each and every claim INCLUDING TOTAL LOSS OF THE INSURED VESSEL.

**All other terms and conditions remain unchanged.**

Attached to and made part of Policy No.: *Per Declaration*

PUP-01.00

## TRIP ENDORSEMENT

ISSUED TO: *Per Declaration*

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THAT PERMISSION IS GRANTED FOR ONE **ONE-WAY TRIP** FROM PORT ISABELLA, TEXAS TO THE CAYMAN ISLANDS.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

Attached to and made part of Policy No.: *Per Declaration*

PUP-01.00

# YACHT INSURING CLAUSES

## GENERAL CONDITIONS

THIS INSURANCE IS LIMITED TO THOSE COVERAGES WHICH ARE INDICATED BY A PREMIUM SET OPPOSITE THERETO ON THE ATTACHED DECLARATIONS PAGE.

1.  **PRIVATE PLEASURE WARRANTY.** Warranted by the Assured that the insured yacht shall be used solely for private purposes and is not to be hired, chartered, leased, or used for any commercial purpose unless permission is endorsed hereon.

2.  **TRANSFER OF INTEREST.** This insurance shall automatically terminate in case this policy or the interest insured thereby shall be sold, assigned, transferred, or pledged without the previous consent in writing of this Company.

3.  **ASSURED'S DUTIES IN CASE OF LOSS.** In the event of any accident, loss, damage, injury or legal proceeding which may give rise to a claim under this policy or against the Assured or any other interest insured hereunder the Assured has the following duties:

    A)  **NOTICE OF LOSS** – Written notice shall be given by or on behalf of the Assured to this Company as soon as practicable, and whenever possible arrangements must be made with this Company for survey of the damage prior to repair. The Assured agrees to give prompt notice to the police or United States Coast Guard in the event of theft of the property.

    B)  **EXAMINATION UNDER OATH** – The Assured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, shall submit and in so far as is within his or their power cause his or their employees, members of the household and others to submit to examination under oath by any person named by this Company, and as often as may be reasonably required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals are lost, at such reasonable time and place as may be designated by this Company, or its representative, and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act of this Company or any of its employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which this Company might otherwise have with respect to any loss or claim, but all such examination and acts shall be deemed to have been made or done without prejudice to this Company's liability.

4.  **PAYMENT OF LOSS AND PREMIUM EARNED.** Any covered loss will be paid within thirty (30) days after proof of loss and proof of interest in the said yacht, all indebtedness of the Assured being first deducted. In the event of payment by this Company for a total or constructive total loss of the property, all premium under all sections of this policy shall be fully earned.

5.  **ASSURED AND ADDITIONAL ASSUREDS (OMNIBUS CLAUSE).** It is understood and agreed that the word "Assured", whenever used in the Collision Clause in Hull and Machinery Insurance, or in Protection and Indemnity Insurance, shall include in addition to the named Assured hereunder the spouse of the Assured, and any person, firm, corporation, or other legal entity who may be operating the vessel with the prior permission of the named Assured. The word "Assured" does not include a paid master or a paid member of the crew of the insured vessel or a person, firm, corporation, or other legal entity, or any agent or employee thereof, operating a shipyard, boat repair yard, marina, yacht club, sales agency, boat service station, or similar organization. Notwithstanding anything contained herein this insurance does not cover liability of such additional Assureds to the Assured and/or Assureds named

in this policy. This insurance is conditioned upon compliance by all Assureds with all the applicable warranties, stipulations, and conditions. Nothing contained herein shall be construed to increase the limits of this company's liability as stated in this policy.

6. **PERSONAL NEGLIGENCE.** Personal negligence or fault of the owner or Assured in the navigation of the vessel or privity or knowledge in respect thereto (except loss, damage, or liability willfully or intentionally caused by the owner or any Assured) shall not relieve this Company of liability under this policy.

7. **TIME FOR SUIT CLAUSE.** No suit or action on this policy for the recovery of any claim hereunder shall be sustainable in any court of law or equity unless commenced within twelve (12) months of the date of loss. If such limitation of time is prohibited by the laws of the state in which this policy is issued, no suit or action under this policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such state.

8. **SUBROGATION AND IMPAIRMENT OF RECOVERY.** It is a condition of this insurance that upon payment of any loss this Company becomes subrogated to all the rights and claims of the Assured arising out of such loss, against any person, corporation, or government. In case of any agreement or act by the Assured, at any time, whereby any such right of recovery of the Assured for loss of or damage to any property insured hereunder is released, lost, or impaired, this Company shall not be bound to pay any loss and, if payment has been made, the Assured is obligated to return such payment to This Company, its right to retain or recover the premium shall not be affected.

9. **ACTION AGAINST COMPANY.** Subject to all the terms and conditions of this policy, it is agreed that any person or his legal representatives who shall have secured final judgment against the Assured because of any injury or damage to the person or property of such person, liability for which injury or loss is covered by said policy, shall thereafter be entitled to recover under the terms of this policy in the same manner and to the same extent as the Assured thereunder. Any payment properly made to such third party under the provisions of this clause shall be on account of the liability of this Company to the Assured under this policy and shall reduce the liability of this Company to the Assured to the same extent as if said payment were made directly to said Assured.

10. **F. C. & S. WARRANTY.** Notwithstanding anything to the contrary contained in the policy, this insurance does not cover claim for loss, damage, or expense caused by or resulting from capture, seizure, arrest, restraint, or detainment, or the consequences thereof or of any attempt thereat, or any taking of the vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise. This insurance also does not cover any consequences of hostilities or warlike operations (whether there be a declaration of war or not) but the foregoing shall not exclude collision or contact with aircraft, rockets or similar missiles, or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire, or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power, and for the purpose of this warranty "power" includes any authority maintaining naval, military, or air forces in association with a power. This insurance also does not cover any loss, damage, or expense caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter, whether in time of peace or war.

This insurance also does not cover the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom or piracy.

11. **NUCLEAR EXCLUSION WARRANTY.** This insurance also does not cover any loss from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct, indirect, proximate, remote, be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; however, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction, nuclear radiation or radioactive contamination is insured against by this policy.

12. **ACQUISITION.** If the Assured purchases another yacht either as a replacement for or in addition to the yacht described in this policy, this policy shall apply to the acquisition and except that the Amount of Insurance for Hull and Machinery shall not exceed the cost to the Assured or $30,000, whichever is less and a $500 deductible shall apply to each claim for loss or damage. The coverage provided by this clause shall only be in effect if the Assured reports such acquisition to this Company within fifteen (15) days from the date of purchase and pays additional premium at the rates of this Company.

13. **OPERATE OTHER YACHT PRIVILEGE.** Subject to all the terms, conditions, and provisions of this policy not inconsistent herewith, this policy also covers the Assured, if an individual, under Hull and Machinery Insurance and Protection and Indemnity Insurance while he is operating for private pleasure purposes only, with the permission of the owner, another yacht, which is neither owned in whole or in part by the Assured, nor is being furnished for his regular use, nor is under charter to him. However, coverage for physical loss or damage to such other yacht and its "Property Covered" as defined in this policy is provided only under Hull and Machinery Insurance and the limit of this Company's liability for such loss shall not exceed the actual cash value of the damaged property at the time of loss, nor shall it exceed what it would then cost to repair or replace the damaged property with other of like kind and quality, nor shall it exceed the amount of Insurance specified for Hull and Machinery Insurance on the declarations page of this policy, whichever is less, subject also to the deductible specified on the declarations page. It is further provided that if there is any other valid insurance against a loss covered under this clause this insurance shall be excess insurance over such other insurance.

14. **LIBERALIZATION CLAUSE.** If a change occurs which would broaden (change) the coverage in this policy without additional premium within sixty (60) days prior to or during the policy period, the broadened coverage will apply immediately to this policy.

15. **OTHER INSURANCE.** This Company shall not be liable for loss, damage, or expense if there is other valid and collectible insurance which would attach if this insurance had not been effected.

16. **CONCEALMENT OF MISREPRESENTATION.** The entire policy shall be voidable at the sole option of this Company if the Assured or his agent has concealed or misrepresented any material facts or circumstances concerning this insurance or the subject thereof, or if the Assured or his agent has been guilty of a fraudulent action or attempted fraud or has sworn falsely in reference to any matter or subject relating to this insurance, whether before or after a loss.

17. **CANCELLATION.** This policy may be cancelled at any time at the Assured's request, or by this Company, by giving thirty (30) days written notice of such cancellation.

In the event that this policy is cancelled by this Company, written notice mailed to the Assured shall constitute a complete notice of cancellation and this policy shall terminate at noon on the thirtieth (30th) day after such notice shall have been mailed.

If the Assured cancels, return premium shall be computed at 90% pro rata. If this Company cancels, return premium shall be computed pro rata. Premium adjustments may be made at the time cancellation is effected or as soon as practicable after cancellation becomes effective. This Company's check or the check of its representative mailed or delivered to the Assured shall be sufficient tender of any refund or premium due to the Assured. In no event, however, shall there be any return premium due when payment is made under this policy for a total and/or constructive total loss.

# HULL AND MACHINERY INSURANCE

1. **PROPERTY COVERED.** The yacht including her spars, sails, tackle, machinery, tenders and their motors, furniture, fuel, and such other equipment of and in the yacht as is generally required aboard for the operation and maintenance of the yacht.

2. **PERILS.** This insurance provided by this section shall cover, subject to the stipulations, conditions, and warranties contained herein, afloat and ashore, against *all risks* of sudden and accidental direct physical loss or damage, including direct physical loss or damage caused by any latent defect in the hull or machinery. In all cases, the cost of repairing or replacing the latently defective part shall not be covered. However, in no case will this policy insure against loss or damage caused by or resulting from designer's errors or negligence.

3. **EXCLUSIONS.** Notwithstanding the foregoing this policy does not cover:

   A) Loss, damage, or expense caused by wear and tear, gradual deterioration (including marine life), electrolysis, corrosion, rust, and dampness of atmosphere, weathering, insects, vermin, mold, osmosis, blistering, and/or delamination.

   B) Loss or damage to currency, traveler's checks, passports, securities, evidences of debt, credit cards, valuable papers or documents, food, and beverages.

   C) Personal watercraft such as jet skis or wave runners are not considered Hull or Personal Effects and are specifically excluded from both Hull and Machinery and Personal Effects Coverage.

4. **PERSONAL EFFECTS.** This coverage includes, subject to the personal effects deductible amount shown on the declarations page for each accident or occurrence, personal effects consisting of clothing, personal articles and sports equipment of the Assured, related household members, guests, and volunteer crew. This coverage does not include: money, jewelry, traveler's checks, any other valuable papers or documents, and property acquired primarily for use on the yacht and which is normally used on board the yacht. This coverage shall apply only while such property is aboard the yacht or while being loaded or unloaded. This Company shall not be liable for more than the actual cash value of said property at the time of loss, but in no event for more than the Amount of Insurance for Personal Effects shown on the declarations page.

5. **EQUIPMENT ON SHORE.** It is also agreed that should any part of the furniture, tackle, boats, or other property of the said vessel be separated and laid up on shore, then this policy shall cover the same to an amount not exceeding 50% of the amount stated under Hull and Machinery, Amount of Insurance on the declarations page. This Amount of Insurance attaching on the said vessel shall be decreased by the insured value of the separated property.

6. **LAND TRANSPORTATION.** This section shall also attach on the insured yacht while being transported on a land conveyance within *the limits of navigation as shown on the declaration page* from the home port or storage yard.

7. **TRAILER INSURANCE.** This Company agrees to provide coverage for all physical loss or damage to any trailer if listed on the declarations page. This coverage is subject to all exclusions included elsewhere in this policy.

   Each claim for loss or damage shall be adjusted separately and from the amount of such adjusted claim the deductible shown on the declarations page shall be deducted. For the purpose of this clause, each accident shall be treated separately. Two or more covered losses resulting from the same accident or occurrence shall be treated a one claim.

This Company shall not be liable beyond the actual cash value of the trailer at the time any loss or damage occurs. This loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation. The amount of loss shall not exceed the amount of insurance shown on the declarations page or the cost to repair with material of like kind and quality, whichever is less.

8.   HULL VALUATION AND CONSTRUCTIVE TOTAL LOSS. This yacht, including all the property insured under this section, for so much as concerns the Assured by agreement between the Assured and this Company, is and shall be valued at the amount stated in Hull and Machinery, Amount of Insurance on the declarations page, but no recovery for a total or constructive total loss shall be had hereunder unless all said property is lost absolutely or unless the expenses of recovering and repairing the yacht shall exceed such amount.

9.   DEDUCTIBLE. Each claim for loss or damage under Hull and Machinery Insurance shall be adjusted separately and from the amount of such adjusted claim the deductible amount shown on the declarations page shall be deducted. The deductible shall not apply to the Collision Clause nor in the event of a total and/or constructive total loss. For the purpose of this clause each accident shall be treated separately, but a sequence of damages arising from the same accident shall be treated as one claim.

In the event a single accident gives rise to a claim where more than one deductible amount would apply, only the highest single amount shall be deducted.

The deductible shall be waived in the adjustment of collision claims involving two or more Assureds of this Company.

10.   REPAIRS. This Company will pay the reasonable and necessary cost to make repairs for a loss covered hereunder without deduction for depreciation for the use of new materials. However, in no event shall the cost to repair or replace damaged sails or coverings of fabric or plastic exceed the actual cash value of such sails or coverings at the time of loss.

11.   UNREPAIRED DAMAGE. No claim for unrepaired damages shall be allowed, except to the extent that the aggregate damage caused by perils insured against during the period of the policy and left unrepaired at the expiration of the policy shall be demonstrated by the Assured to have diminished the actual market value of the vessel on that date if undamaged by such perils. In no case shall this Company be liable for unrepaired damage in addition to a subsequent total or constructive total loss sustained during the period of this policy.

12.   COLLISION. It is further agreed that if the yacht hereby insured shall come into collision, while waterborne, with any other vessel or craft, and the Assured shall, in consequence thereof, become legally liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, this Company will pay the Assured such sum or sums so paid not exceeding in respect of any one such collision the Hull and Machinery, Amount of Insurance specified on the declarations page. In cases where the liability of the Assured has been contested, with the consent, in writing, of this Company, this Company will also bear a like amount of the costs and expenses that may be insured in contesting the liability resulting from said collision.

Provided always that the foregoing clause shall in no case extend to any sum which the Assured may become liable to pay, or shall pay, for removal of wrecks or obstructions, for loss of life, bodily injury, illness, or for injury to harbors, wharves, piers, stages, or similar structures.

13.   SUE AND LABOR. If, following a loss or misfortune, it shall be lawful and necessary for the Assured, its factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said vessel or any part thereof, without prejudice to this insurance, this Company, will pay such charges. It is declared and agreed that no acts of the Insurer or Assured in recovering, saving, or preserving the property insured shall be considered as a waiver or acceptance of abandonment.

Yacht/PHP-01.00

14.   **COMMERCIAL TOWING AND ASSISTANCE.** If any of the following services which would not otherwise be covered under this policy become necessary while the yacht is away from a safe harbor this Company will pay, per policy term, up to the amount stated under Towing Coverage, Amount of Insurance on the declarations page for:

    A)    Mechanical labor at the place of its breakdown;

    B)    Towing to the nearest marina, marine service station, or other service point where necessary repairs can be made;

    C)    Deliver of fuel, oil or battery, however, there will be no payment for the cost of these items.

It is understood and agreed that the above services must be provided by a professional service.

No deductible shall apply to the above coverage.

15.   **LIVE ABOARD EXTENSION.** In consideration of the premium charged, permission is hereby granted the Assured to live aboard the yacht if they choose to. However, it is understood and agreed that during such time, the Medical Payments Insurance hereunder as respects residents of the yacht is excluded.

All other terms and conditions of this policy remain unchanged.

Yacht/PHB-01.00

## PROTECTION AND INDEMNITY INSURANCE

1. **PROPERTY DAMAGE AND BODILY INJURY.** This Company further agrees that if the Assured shall be reason of his interest in the insured vessel become legally liable to pay and shall pay any sum or sums in respect of any responsibility, claim, demand, damages, expenses or other loss arising from or occasioned by any of the following matters or things during the currency of this policy in respect of the vessel hereby insured, that is to say:

   A) Loss of or damage to any other ship or boat or goods, merchandise, freight, or other things or interests whatsoever, on board such other ship or boat, caused proximately or otherwise by the yacht insured, including collision liability in so far as the same is not covered in amount by the Collision Clause of this policy.

   B) Loss of or damage to any goods, merchandise, freight, or other things or interest whatsoever other than as aforesaid, whether on board said yacht or not;

   C) Loss of or damage to any harbor, dock (graving or otherwise), slipway, way, gridiron, pontoons, pier, quay, jetty, stage, buoy, telegraph cable or other fixed or movable thing whatsoever or to any goods or property in or on the same, however caused;

   D) Any attempted or actual raising, removal or destruction of the wreck of the insured yacht or property thereon, or any neglect or failure to raise, remove or destroy the same, less the value of all property which has been saved and of the wreck itself, if any;

   E) Loss of life, bodily injury, or illness; this Company will pay the Assured such sum or sums so paid for such loss; *provided* always that the liability of this Company is limited to the sum stated under Protection and Indemnity, Limit of Liability any one Accident or Occurrence on the declarations page; it being understood that this limit applies to any accident or series of accidents arising out of the same event.

2. **COSTS.** And in case the liability of the Assured shall be contested in any suit or action, this Company will pay such ensuing costs including attorney's fees as the Assured may incur with the consent in writing of this Company.

3. **SETTLE AND DEFEND.** This Company may settle and defend any claim or suit as it deems appropriate. This Company retains the option at any time to tender the policy limits available after deducting attorneys' fees, costs, and any other amounts already paid, at which time there will be no further responsibility of this Company under this policy for the loss.

4. **AGGREGATE LIMIT.** Notwithstanding anything to the contrary herein, the total amount recoverable under the Protection and Indemnity Insurance coverage of this policy for all losses, including property damage, bodily injury, loss of life, and attorneys' fees and costs, resulting from any accident or series of accidents arising out of the same event, shall not exceed, in the aggregate, the sum specified in this policy as Protection and Indemnity, Limit of Liability any one Accident or Occurrence on the declarations page.

5. **EXCLUSIONS.** This insurance does not cover:

   A) Any liability assumed by the Assured under any contract or agreement unless liability existed in absence of such contract or agreement;

   B) Any liability of the Assured while the vessel is in or on any land or other conveyance away from the premises at the point of hauling out or launching.

   C) Any liability arising from the operation or use of a personal watercraft (i.e., jet ski, wave runner, etc.)

6. **WATERSKIING RESTRICTED LIMITS.** During such time as the insured yacht or its tender is being used for water skiing, aquaplaning or any similar sport in which objects or persons are towed the coverage afforded in this section of the policy is amended as follows:

JUL-12-2001 09:08 AM                                                          P. 15

.The limit of liability any one accident or occurrence is $25,000 or the sum stated in the Protection and Indemnity limit of liability any one accident or occurrence on the declaration page, whichever is less. The reduced limit of liability shall apply from the time any person or persons or objects leave the yacht or tender insured hereunder or such activity commences, whichever may first occur, and will continue until the person or persons and objects are safely aboard the yacht or tender or safely landed elsewhere and all such operations have ceased completely. Nothing herein contained shall be held to vary, waive or extend any of the exclusions, conditions or other terms of this policy, other than stated above.


All other terms and conditions of this policy remain unchanged.

## MEDICAL PAYMENTS INSURANCE

This Company agrees to pay to or for each person who s.. ..,.ns bodily injury caused by accident occurring during the policy period, while in or upon, boarding or leaving insured yacht, the reasonable expenses of necessary medical, surgical, ambulance, hospital, and professional nursing services and, in the event of death resulting from such injury, the reasonable funeral expense. all incurred within one (1) year from the date of accident, subject to the following conditions.

1.  **LIMITS OF LIABILITY.** Notwithstanding the foregoing, this Company shall not be liable hereunder for any expense or combined expenses incurred in excess of the sum stated as Medical Payments, Limit of Liability any one Accident or Occurrence on the declarations page.

2.  **EXCLUSIONS.** This insurance does not cover:

    A)  Bodily injury to or death of any person:
        (1)  To or for whom benefits are payable under any workers' compensation act or under the Federal Longshoremen's and Harbor Workers' Compensation Act;
        (2)  Who, in being in or upon or in boarding or leaving the yacht, is in or upon the vessel without the permission of the Assured;
        (3)  Who is an employee of the Assured while engaged in the employment of the Assured, or while engaged in the operation, maintenance or repairs of the yacht;
    B)  Any liability assumed by the Assured under any contract or agreement;
    C)  Any liability while the yacht is in or on any land or other conveyance away from the premises at the point of hauling out or launching.

3.  **MEDICAL AND OTHER REPORTS.** The injured person, or a legal representative shall, as soon as practicable, furnish full obtainable information pertaining to the accident and injury, and execute authorization to enable this Company to obtain medical reports and copies of records.

4.  **EXAMINATION.** The injured person shall submit to physical examination by physicians selected by this Company when and as often as this Company may reasonably require.

5.  **PROOF AND PAYMENT OF CLAIM.** As soon as practicable after provision of services which in cost equal or exceed the limit of this Company's liability under this section or after the expiration of one year from the date of accident, whichever first occurs, the injured person, or a legal representative, shall give to this Company written proof of claim under oath. The proof of claim shall state the name and address of each person and organization which has provided services, the nature and extent of and the dates of rendering of such services, the itemized charges therefore and the amounts paid thereon. Upon this Company's request, the injured person, or a legal representative shall cause to be given to this Company by each such provider of services written proof of claim under oath, stating the nature and extent and dates of provision of such services, the itemized charges therefore and the payments received thereon.

This Company shall have the right to make payment at any time to the injured person or to any such person or organization on account of the services provided, and a payment so made shall reduce to the extent thereof the amount payable hereunder to and for such injured person on account of such injury.

No payment made under this section shall constitute an admission of liability of the Assured or, except under his section, of this Company.

E

**"EXHIBIT E"**

Mar. 02 2001 11:09A   P LASERJET 3200                          P.2

# ACORD PROPERTY LOSS NOTICE

| | | DATE |
|---|---|---|
| | | 03/02/2001 |

| PRODUCER | PHONE (A/C, No, Ext): 561-232-2552 | MISCELLANEOUS INFO (Site & location code) | DATE OF LOSS AND TIME 0803-(-200) 9:00AM | AM ☐ PM ☐ | PREVIOUSLY REPORTED YES ☐ NO ☐ |

Paul Lynch & Associates, Inc.
3388 NE Sugarhill Ave., Suite 201
Jensen Beach, FL 34957

| POLICY TYPE | COMPANY AND POLICY NUMBER | | NAIC CODE | POLICY DATES |
|---|---|---|---|---|
| PROP/ HOME | CO: Pacific Southern R. Poope. | | | EFF: |
| | POL: MYAQQ 00652 | | | EXP: |
| FLOOD | CO: | | | EFF: |
| | POL: | | | EXP: |
| WIND | CO: | | | EFF: |
| | POL: | | | EXP: |

| CODE: | SUB CODE: |
|---|---|
| AGENCY CUSTOMER ID | |

## INSURED

| | | | CONTACT | CONTACT INSURED |

| NAME AND ADDRESS OF INSURED | DATE OF BIRTH 12-17-36 | NAME AND ADDRESS OF INSURED |
|---|---|---|
| Ponce DeLeon, Lazaro | | 13369 NW 2ᴺᴰ Terec. |
| 13369 NW 2 Terra | SOC SEC # OR FEIN: 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 | Miami FL. 33182 |
| Miami, FL 33182 | | |

| RESIDENCE PHONE (A/C, No) 305-225 9024 | BUSINESS PHONE (A/C, Ext) | RESIDENCE PHONE (A/C, No) 305 225.9024 | BUSINESS PHONE (A/C, No, Ext) |
|---|---|---|---|

| NAME AND ADDRESS OF SPOUSE (if APPLICABLE) | DATE OF BIRTH | WHERE TO CONTACT | WHEN TO CONTACT |
|---|---|---|---|
| | SOC SEC # OR FEIN: | | |

## LOSS

| LOCATION OF LOSS | N L.N 18° 44.44 L W 087° 32.49 | POLICE OR FIRE DEPT TO WHICH REPORTED |
|---|---|---|

| KIND OF LOSS | FIRE ☐ | LIGHTNING ☐ | FLOOD ☐ | OTHER (explain) ☐ | PROBABLE AMOUNT ENTIRE LOSS TOTAL |
|---|---|---|---|---|---|
| | THEFT ☐ | HAIL ☐ | WIND ☐ | | |

DESCRIPTION OF LOSS AND DAMAGE (Use separate sheet, if necessary)

## POLICY INFORMATION

MORTGAGEE
☐ NO MORTGAGEE

HOMEOWNER POLICIES SECTION 1 ONLY (Complete for coverages A, B, C, D & additional coverages. For Homeowners Section II Liability Losses, use ACORD 3.)

| A. DWELLING | B. OTHER STRUCTURES | C. PERSONAL PROPERTY | D. LOSS OF USE | DEDUCTIBLES | DESCRIBE ADDITIONAL COVERAGES PROVIDED |
|---|---|---|---|---|---|
| | | | | | ON |

☐ COVERAGE A. EXCLUDES WIND
SUBJECT TO FORMS (insert form numbers and edition dates, special deductibles)

FIRE, ALLIED LINES & MULTI-PERIL POLICIES (Complete only those items involved in loss)

| ITEM | SUBJECT OF INSURANCE | AMOUNT | % COINS | DEDUCTIBLE | COVERAGE AND/OR DESCRIPTION OF PROPERTY INSURED |
|---|---|---|---|---|---|
| | BLDG ☐ CNTS ☐ | | | | |
| | BLDG ☐ CNTS ☐ | | | | |
| | BLDG ☐ CNTS ☐ | | | | |

SUBJECT TO FORMS (insert form numbers and edition dates, special deductibles)

| FLOOD POLICY | BUILDING: | DEDUCTIBLE: | ZONE | PRE-FIRM ☐ | DIFF IN ELEV | FORM TYPE | GENERAL ☐ | CONDO ☐ |
|---|---|---|---|---|---|---|---|---|
| | CONTENTS: | DEDUCTIBLE: | | POST-FIRM ☐ | | | DWELLING ☐ | |
| WIND POLICY | BUILDING | DEDUCTIBLE | CONTENTS | ZONE | FORM TYPE | GENERAL ☐ DWELLING ☐ | CONDO ☐ | |

REMARKS/OTHER INSURANCE (List companies, policy numbers, coverages & policy amounts) NY ONLY. PREVIOUS ADDRESS OF INSURED & WIFE'S MAIDEN NAME

| CAT# | FICO# | ADJUSTER ASSIGNED | ADJUSTER # | DATE ASSIGNED |
|---|---|---|---|---|
| REPORTED BY | REPORTED TO | SIGNATURE OF INSURED | SIGNATURE OF PRODUCER | |

ACORD 1 (2000/01)         NOTE: IMPORTANT STATE... ...TION ON REVERSE SIDE         © ...ORD CORPORATION 1988

EXHIBIT NO. E

F

**"EXHIBIT F"**

CAUSE NO. 2001- CPC-162-C

| | | |
|---|---|---|
| IN RE ESTATE OF | § | IN THE COUNTY COURT |
| | § | |
| LAZARO PONCE DE LEON GOMEZ | § | AT LAW NO. ___3___ OF |
| | § | |
| DECEASED | § | CAMERON COUNTY, TEXAS |

## ORDER AUTHORIZING
## TEMPORARY LETTERS OF ADMINISTRATION

On this day came on to be heard the written application of OMAR PONCE DE LEON for

TEMPORARY LETTERS OF ADMINISTRATION. In support thereof, there was presented in open

Court the affidavit of applicant heretobefore filed with the Court together with a death certificate

and verified proof of death and other facts as required by law.

Having considered the evidence and papers on file in this cause and being fully advised of

the premises, the Court finds therefrom that all of the statements and allegations contained in the

Application for Letters of Temporary Administration are true and correct.

The Court further finds that it has jurisdiction and venue over this Estate.

The Court further finds that owing to an insurance loss suffered by the Deceased that there

is an immediate need to have a personal representative appointed to negotiate with insurance carriers

and/or their agents/adjusters.

The court further finds that at this time it is not known if this estate would have any assets

if insurance losses were not paid and that accordingly in lieu of bond the court finds that it would

be appropriate to specifically limit the powers of the Temporary Administrator to negotiating

insurance settlements and requiring that any insurance policy proceeds payable to the deceased or

the estate of the deceased, be paid directly into the Registry of the Court.

A CERTIFIED COPY
Joe G. Rivera, County Clerk
Cameron County, Texas
Page_____ of_____

EXHIBIT NO. E

35/07/2001    00:45    956544⌐ `2    ⌐    ⌐    DENIS DOWNEY                    PAGE  03

IT IS THEREFORE ORDERED, ADJUDGED and DECREED by the Court that the Temporary Letters of Administration be issued to applicant OMAR PONCE DE LEON.

IT IS FURTHER ORDERED that upon taking the oath authorized by law, and without the posting of any bond, that OMAR PONCE DE LEON shall serve as temporary administrator of the Estate of LAZARO PONCE DE LEON GOMEZ but that the applicant's powers shall be limited to negotiating insurance settlements and having any proceeds paid directly into the Registry of the Court. Such powers shall continue until further order of the court.

SIGNED AND ENTERED this _21st_ day of _May_____, 2001.

_____
JUDGE PRESIDING



State of Texas
County of Cameron
    I, Joe G. Rivera,  County Clerk of
Cameron County Texas do certify
that the foregoing is a true and correct
copy of the original record now on file
and/or recorded by me in the_____
_____Probate_____ Records
_____5-21-01_____ Date
JOSE RIVERA, COUNTY CLERK
Cameron County, Texas
By_____, Deputy

A CERTIFIED COPY
Joe G. Rivera, County Clerk
Cameron County, Texas
Page ____2____ of ____2____

G

**"EXHIBIT G"**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

INSURANCE COMPANY OF THE WEST,                    *
                                                  *
                    Plaintiff                     *
                                                  *          CIVIL ACTION B02-0193
VERSUS                                            *                    *In Admiralty*
                                                  *
THE ESTATE OF LAZARO PONCE de                     *
LEON GOMEZ, by and through its                    *          *HON. JUDGE ANDREW S. HANEN*
Temporary Administrator, Luis Omar Ponce          *
de Leon,                                          *
                                                  *
                    Defendant                     *

## AFFIDAVIT

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

      **BEFORE ME**, the undersigned authority duly qualified and commissioned in the State

of Louisiana, personally came and appeared:

### HENRY A. KING

who, being first duly sworn by me, deposed:

    1.     My name is Henry A. King, a partner in the law firm of King, LeBlanc & Bland,

          L.L.P., and duly licensed and admitted to practice in the States of Louisiana and

          Texas.



EXHIBIT NO. G

2.    Along with Tom Fleming and his law firm of Fleming & Hernandez, I have served as counsel for Luis Omar Ponce de Leon, temporary administrator for the Estate of Lazaro Ponce de Leon Gomez, and was primarily responsible for defending a complaint for declaratory judgment brought on behalf of the Insurance Company of the West in the United States District Court for the Southern District of Alabama in the matter entitled and numbered, "Insurance Company of the West v. Estate of Lazaro Ponce de Leon Gomez, by and through its Temporary Administrator, Luis Omar Ponce de Leon, Case No. 01-411-P-S" (the "Alabama Litigation").

3.    Also assisting in the defense of the Alabama Litigation was George Irvine and his law firm of Stone, Granade & Crosby, P.C.

4.    From June 6, 2001 through September 30, 2002, we were actively engaged in the representation of Luis Omar Ponce de Leon, temporary administrator for the Estate of Lazaro Ponce de Leon Gomez, in the Alabama Litigation.  Our principal activity included extensive briefing on our motion to transfer this proceeding to Texas since Texas was the more convenient forum in light of the fact that most of the factual circumstances giving rise to this matter occurred in Texas and that most of the critical witnesses reside in Texas.

5.    This motion to transfer resulted in very protracted litigation with numerous arguments and numerous briefs being filed by both parties.  A copy of the docket sheet in the Alabama Litigation is attached as Exhibit "A" hereto.  The Insurance Company of the West resisted the motion to transfer venue of this action to Texas on every front and filed multiple appeals, multiple requests for reconsideration

and other motions which caused our client to incur very substantial attorney fees and out-of-pocket costs in the Alabama Litigation.

6.     From the inception of our representation up through and including January 31, 2003, the time value of attorney and paralegal time at our firm's standard hourly rates was $46,698.50. Our firm also incurred out-of-pocket costs in this matter, including fees and costs paid to our local counsel in Alabama of $3,653.79.

7.     It is noteworthy that the attorney fees and costs incurred by our firm in the motion to transfer are quite a bit higher than would normally be expected for this type of motion practice. However, the vigorous resistance of Insurance Company of the West to the transfer motion and their submittal of multiple briefs on each motion, and multiple motions for reconsideration on each ruling of the court is the reason attorney fees and out-of-pocket costs were so substantial.

_____
**HENRY A. KING**

Sworn to and subscribed
before me, this _7TH_ day
of February 2003.

_____
**NOTARY PUBLIC**

S:\1945\001\PLEADINGS-TEXAS\AFFIDAVIT-HENRY KING.DOC

-3-

Docket as of September 30, 2002 8:01 pm                                              Web PACER (v2.3)

# U.S. District Court

## Southern District of Alabama (Mobile)

## CIVIL DOCKET FOR CASE #: 01-CV-411

### Insurance Co of West v. Estate of Gomez

Filed: 06/06/01
Assigned to: Senior Judge Virgil Pittman
Referred to: Mag. Judge William H. Steele
Demand: $0,000
Nature of Suit: 120
Lead Docket: None
Jurisdiction: Federal Question
Dkt# in other court: None
Cause: 28:2201 Declaratory Judgment

```
INSURANCE COMPANY OF THE WEST        Blane H. Crutchfield, Esq.
     plaintiff                       2516946375
                                     [COR LD NTC]
                                     Norman Matt Stockman
                                     2516946375
                                     [COR NTC]
                                     Hand Arendall, L.L.C.
                                     P. O. Box 123
                                     Mobile, AL 36601
                                     (334) 432-5511

    v.
ESTATE OF LAZARO PONCE DE LEON       George R. Irvine, III, Esq.
GOMEZ, by and through its            [COR LD NTC]
Temporary Administrator, Louis       Stone, Granade & Crosby, P.C.
Omar Ponce de Leon                   7133 Stone Dr.
     defendant                       Daphne, AL 36526
                                     (334) 626-6696
                                     Henry A. King
                                     5045821233
                                     [COR LD NTC phv]
                                     Michael L. Vincenzo
                                     5045821233
                                     [COR LD NTC phv]
                                     King, LeBlanc & Bland, LLP
                                     201 St. Charles Avenue, Suite
                                     3800
                                     New Orleans, LA 70170
                                     504-582-3800
```


EXHIBIT "A"

# DOCKET   PROCEEDINGS

DATE    #        DOCKET    ENTRY

6/6/01   1       COMPLAINT filed;   FILING FEE $ 150.00   RECEIPT # 34931 (srr)
                 [Entry date 06/07/01]

6/7/01   2       SUMMONS(ES) issued for Estate of Gomez (caled counsel to
                 p/u) (srr)

6/7/01   --      Added for Insurance Co of West  attorney Norman Matt
                 Stockman (srr)

7/9/01   3       ALIAS SUMMONS issued for Estate of Gomez (attorney to p/u)
                 (srr)

7/23/01  4       RETURN OF SERVICE executed as to Estate of Gomez 7/11/01
                 Answer due on 7/31/01 for Estate of Gomez (srr)
                 [Entry date 07/24/01]

10/3/01  5       MOTION by Estate of Gomez to Dismiss for lack of personal
                 jurisdiction, or to Transfer Case to USDC, Southern
                 District of TX; ref to J/Steele (srr)

10/3/01  6       MEMORANDUM by Estate of Gomez  in support of [5-1] motion
                 to Dismiss for lack of personal jurisdiction, [5-2] motion
                 to Transfer Case to USDC, Southern District of TX (srr)

10/4/01  7       ORDER, Response to Motion set to 11/5/01 for [5-1] motion
                 to Dismiss for lack of personal jurisdiction, set to
                 11/5/01 for [5-2] motion to Transfer Case to USDC, Southern
                 District of TX ( signed by Mag. Judge William H. Steele )
                 copies to counsel (srr) [Entry date 10/05/01]

10/30/01 8       MOTION by Insurance Co of West to Extend Time to respond
                 to motion to dismiss; ref to J/Steele (srr)
                 [Entry date 10/31/01]

10/31/01 9       Order on Rule 16 entered;  Rule 16 Conference set for 10:00
                 1/7/02; copies to counsel (srr)

10/31/01 10      NOTICE entered, endorsed granting [8-1] motion to Extend
                 Time to respond to motion to dismiss, Response to Motion
                 set to 11/19/01 for [5-1] motion to Dismiss for lack of
                 personal jurisdiction, set to 11/19/01 for [5-2] motion to
                 Transfer Case to USDC, Southern District of TX  ( signed
                 by Mag. Judge William H. Steele ) copies to counsel (srr)

11/19/01 11      MOTION by Insurance Co of West to Extend Time to file
                 response to motion to dismiss; ref to J/Steele (srr)
                 [Entry date 11/20/01]



11/20/01 12    NOTICE entered, endorsed granting [11-1] motion to Extend
               Time to file response to motion to dismiss, Response to
               Motion set to 11/29/01 for [5-1] motion to Dismiss for lack
               of personal jurisdiction, set to 11/29/01 for [5-2] motion
               to Transfer Case to USDC, Southern District of TX  (
               signed by Mag. Judge William H. Steele ) copies to counsel
               (srr)

11/29/01 13 .  RESPONSE by Insurance Co of West  to [5-1] motion to
               Dismiss for lack of personal jurisdiction, [5-2] motion to
               Transfer Case to USDC, Southern District of TX; ref to
               J/Steele (srr) [Entry date 11/30/01]

11/30/01 14    NOTICE by Insurance Co of West of filing exhibits in
               support of motion to dismiss/transfer venue (srr)
               [Entry date 12/03/01]

12/13/01 15    REPLY MEMORANDUM filed by Estate of Gomez in Support of
               Motion to Dismiss for Lack of Personal Jurisdiction and
               Venuei, or in the alternative, for Transfer of Venue/Reply
               to Plaintiff's response (Doc. 13); ref. MJ/Steele (loose)
               (mab) [Entry date 12/14/01] [Edit date 12/14/01]

12/20/01 16    ORDER, Motion Hearing set for 10:30 1/7/02 for [5-1]
               motion to Dismiss for lack of personal jurisdiction, set
               for 10:30 1/7/02 for [5-2] motion to Transfer Case to USDC,
               Southern District of TX, setting Response to Order
               Deadline re: [16-1] order to 12/28/01 for Estate of Gomez,
               for Insurance Co of West to file & serve any uppl
               evidence,  set Brief deadline to 1/3/02 addressing issues
               as set out ( signed by Mag. Judge William H. Steele )
               copies to counsel (srr)

12/26/01 17    MOTION by Insurance Co of West for Extension of Time in
               Which to Coduct Discovery and Submit Evidence on Issue of
               Personal Jurisdiction, and to reset hearing scheduled for
               1/7/02 to February, 2002; ref. MJ/Steele (mab)
               [Entry date 12/27/01]

12/28/01 18    SUPPLEMENTAL BRIEF by defendant Estate of Gomez in re:
               [5-1] motion to Dismiss for lack of personal jurisdiction,
               [5-2] motion to Transfer Case to USDC, Southern District of
               TX ; ref to J/Steele (srr) [Entry date 01/02/02]

1/2/02   19    ORDER   granting [17-1] motion for Extension of Time in
               Which to Coduct Discovery and Submit Evidence on Issue of
               Personal Jurisdiction, granting [17-2] motion to reset
               hearing scheduled for 1/7/02 to February, 2002,  reset
               Discovery deadline to 1/31/02 for pla & to submit addl
               evidence on issue of personal jurisdiction,  set deadline
               for 2/13/02 for dft to file a response, Motion Hearing
               set for 10:00 2/21/02 for [5-1] motion to Dismiss for lack
               of personal jurisdiction, set for 10:00 2/21/02 for [5-2]
               motion to Transfer Case to USDC, Southern District of TX (
               signed by Mag. Judge William H. Steele ) copies to counsel
               (srr)

1/2/02   20    NOTICE by Estate of Gomez of filing original affdt of Luis

Omar Ponce deLeon in place of copy attached as Exhibit A to
suppl brief filed 12/28/01 (srr) [Entry date 01/03/02]

1/3/02    21    ORDER, that the issue of jurisdiction is unresolved (see
                motion to dism/transfer venue - doc. 5-6,18); the Rule
                16(b) Sched Conf set 1/7/02 in CONTINUED, to be reset at a
                later date ( signed by Senior Judge Virgil Pittman )
                counsel notified by phone; copies to counsel (srr)

1/18/02   22    MOTION by Estate of Gomez for Henry A. King, Michael L.
                Vincenzo to Appear Pro Hac Vice; ref to J/Pittman (srr)

1/22/02   23    NOTICE entered, endorsed granting [22-1] motion for Henry
                A. King, Michael L. Vincenzo to Appear Pro Hac Vice (
                signed by Senior Judge Virgil Pittman ) copies to counsel
                (srr) [Entry date 01/23/02]

1/30/02   24    JOINT MOTION to Extend Time to conduct discovery & submit
                evidence on issue of personal jurisdiction; ref to
                J/Steele (srr)

1/31/02   25    ORDER   granting [24-1] joint motion to Extend Time to
                conduct discovery & submit evidence on issue of personal
                jurisdiction,   reset Discovery deadline to 2/22/02,
                reset Brief deadline to 3/1/02 for pla to submit addl
                evidence on issue of personal jurisdiction,   reset
                deadline for 3/15/02 for dft to file responsive brief,
                Motion Hearing set for 10:00 3/28/02 for [5-1] motion to
                Dismiss for lack of personal jurisdiction, set for 10:00
                3/28/02 for [5-2] motion to Transfer Case to USDC, Southern
                District of TX ( signed by Mag. Judge William H. Steele )
                copies to counsel (srr)

3/1/02    26    Supplemental [13-1] response to motion to dismiss or
                transfer of venue filed by Insurance Co of West; ref to
                J/Steele (srr) [Entry date 03/05/02]

3/1/02    27    Supplemental [14-1] notice of filing exhibits in support of
                suppl response to motion to dismiss or transfer venue filed
                by Insurance Co of West (srr) [Entry date 03/05/02]

3/11/02   28    Pre-trial conference set at 10:30 4/23/02   before Senior
                Judge Virgil Pittman; copies to counsel (srr)

3/15/02   29    REPLY by Estate of Gomez  to response to [5-1] motion to
                Dismiss for lack of personal jurisdiction, [5-2] motion to
                Transfer Case to USDC, Southern District of TX; ref to
                J/Steele (srr) [Entry date 03/18/02]

3/28/02   --    Motion hearing re: [5-1] motion to Dismiss for lack of
                personal jurisdiction and [5-2] motion to Transfer Case to
                USDC, Southern District of TX held before Judge Steele
                Tape/Scanner: 232 & 233  3306-End, 0-645 (mbp)
                [Entry date 04/03/02]

4/11/02   30    ORDER, the Notice of Pretrial Conf was issd due to a
                clerical mistake, the conf is canceled  ; ptys to
                disregard the notice ( signed by Senior Judge Virgil
                Pittman ) copies faxed (srr)

| | | |
|---|---|---|
| 4/12/02 | 31 | REPORT and RECOMMENDATIONS RR states re: [5-1] motion to Dismiss for lack of personal jurisdiction be denied, [5-2] motion to Transfer Case to USDC, Southern District of TX be granted  Motion no longer referred.  Objections to R and R due by 5/2/02 ( signed by Mag. Judge William H. Steele ) copies to counsel (srr) [Entry date 04/15/02] |
| 4/29/02 | 32 | OBJECTION by Insurance Co of West to [31-1] report and recommendation (RR states re: [5-1] motion to Dismiss for lack of personal jurisdiction be denied, [5-2] motion to Transfer Case to USDC, Southern District of TX be granted); ref. to J/Pittman 4/30/02 (jlr) [Entry date 04/30/02] |
| 4/29/02 | 33 | MEMORANDUM by Insurance Co of West in support of [32-1] objection to M/J recommendation; ref. to J/Pittman 4/30/02 (jlr) [Entry date 04/30/02] |
| 5/16/02 | 34 | RESPONSE by Estate of Gomez to [32-1] objection to R/R; ref to J/Pittman (srr) [Entry date 05/17/02] |
| 5/30/02 | 35 | MOTION by Insurance Co of West to Strike affdt of Tom Fleming; ref to J/Pittman (srr) [Entry date 05/31/02] |
| 6/4/02 | 36 | ORDER ADOPTING & MODIFYING [31-1] report and recommendation RR states re: [5-1] motion to Dismiss for lack of personal jurisdiction be denied, [5-2] motion to Transfer Case to USDC, Southern District of TX be granted; granting [35-1] motion to Strike affdt of Tom Fleming, denying [5-1] motion to Dismiss for lack of personal jurisdiction, granting [5-2] motion to Transfer Case to USDC, Southern District of TX ( signed by Senior Judge Virgil Pittman ) copies to counsel (srr) |
| 6/4/02 | 37 | JUDGMENT that motion to dismiss for lack of personal jurisdiction & for improper venue is denied; motion to transfer case to Southern District of TX is granted ( signed by Senior Judge Virgil Pittman ); J/E # 10830 Judgment EOD: 6/4/02; copies to counsel, Clerk SDTX (srr) |
| 6/4/02 | -- | Case closed (srr) |
| 6/4/02 | -- | Sent entire file to SDTX via UPS (srr) |
| 6/5/02 | 38 | MOTION by Insurance Co of West to request return of physical file from Southern District of TX, and to Stay transfer; ref to J/Pittman (srr) [Entry date 06/06/02] |
| 6/6/02 | 39 | ORDER  granting [38-1] motion to request return of physical file from Southern District of TX; the court reserves ruling on motion to stay transfer; Clerk to effectuate return of the file ( signed by Senior Judge Virgil Pittman ) copies to counsel, Clerk (srr) |
| 6/6/02 | -- | Faxed copy of order dated 6/6/02 (doc. 39) to Clerk, SDTX (srr) |
| 6/12/02 | 40 | Received file back from USDA - Southern District of TX per J/Pittman's order dated 6/6/02 (for ruling on doc. 38) (srr) |
| 6/12/02 | 41 | MOTION by Insurance Co of West for Reconsideration of |

[37-1] judgment order transferring case to SDTX, or for
Leave to File interlocutory appeal, or to Transfer Case
to SDFL - Miami; ref to J/Pittman (srr)
[Entry date 06/13/02]

6/14/02   42      ORDER, Response to Motion set to 7/12/02 for [41-1] motion
for Reconsideration of [37-1] judgment order transferring
case to SDTX, set to 7/12/02 for [41-2] motion for Leave to
File interlocutory appeal, set to 7/12/02 for [41-3] motion
to Transfer Case to SDFL - Miami ( signed by Senior Judge
Virgil Pittman ) copies to counsel (srr)

7/12/02   43      RESPONSE in opposition by Estate of Gomez  to [41-1] motion
for Reconsideration of [37-1] judgment order transferring
case to SDTX; ref to J/Pittman (srr) [Entry date 07/15/02]

7/24/02   44      REPLY by Insurance Co of West  to response to [41-1] motion
for Reconsideration of [37-1] judgment order transferring
case to SDTX; ref to J/Pittman (srr) [Entry date 07/25/02]

9/30/02   45      ORDER   granting [41-1] motion for Reconsideration of
[37-1] judgment order transferring case to SDTX; upon
reconsideration,  denying [41-2] motion for Leave to File
interlocutory appeal, denying [41-3] motion to Transfer
Case to SDFL - Miami, denying [38-2] motion to Stay
transfer; this action is transferred to the Southern
District of Texas; Clerk to effectuate transfer forthwith (
signed by Senior Judge Virgil Pittman )  copies to counsel,
Clerk (srr)

---

**Case Flags:**
**CL2002**
**R16SET**

---

**END OF DOCKET: 1:01cv411**

---

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/07/2003 16:12:41 | | |
| **PACER Login:** | nk0003 | **Client Code:** | 1945-001 cnw |
| **Description:** | docket report | **Search Criteria:** | 1:01cv00411 |
| **Billable Pages:** | 6 | **Cost:** | 0.42 |

**"EXHIBIT H"**

**"EXHIBIT H"**
**TO**
**MOTION FOR SUMMARY JUDGMENT**
**AND BRIEF IN SUPPORT**

---

THE STATE OF TEXAS          §
                            §   **AFFIDAVIT OF TOM FLEMING**
COUNTY OF CAMERON           §

BEFORE ME, the undersigned Notary Public, on this day personally appeared **Tom Fleming**, who being by me here and now duly sworn upon oath, says:

"My name is Tom Fleming. I am over the age of eighteen (18) years and am not disqualified to make this affidavit. I am lead Counsel in the case styled *Insurance Company of the West v. Estate of Lazaro Ponce de Leon Gomez, by and through its Temporary Administrator, Luis Omar Ponce de Leon*, Civil Action B-02-193, in the United States District Court for the Southern District of Texas, Brownsville Division.

"On July 17, 2001, my firm, Fleming & Hernandez, P.C., was retained in writing by Luis Ponce de Leon to represent the Estate of Lazaro Ponce de Leon Gomez in this suit then pending in the United States District Court for the Southern District of Alabama, Southern Division. After being retained, with consent of Luis Ponce de Leon, I sought the assistance of the Law Firm of King, LaBlanc & Bland of New Orleans, Louisiana to contest venue of the suit in the State of Alabama. As a result of the actions of King, LeBlanc & Bland along with local Counsel, George R. Irvine III, the motion to transfer was granted on June 4, 2002. Thereafter, Insurance Company of

*"EXHIBIT H"* - AFFIDAVIT OF TOM FLEMING
to Motion for Summary Judgment and Brief in Support
TF/bgw #011087 L:\WARNKE\CLIENT\Ponce\USDC-Brnsv'le\1Aff-Fleming.wpd

Page 1 of 3

EXHIBIT NO. H

the West requested the Court reconsider its decision which was denied on September 30, 2002. Following that last order, the suit was transferred.

"On October 2, 2002, demand was made on Insurance Company of the West pursuant to Texas Insurance Code, Article 21.21, Section 16(e) for payment of Two Hundred Eighty-five Thousand and no/100ths ($285,000.00) Dollars actual damages and Twenty Thousand and no/100ths ($20,000.00) Dollars in expenses and attorney's fees reasonably incurred to that date. On October 14, 2002, the demand was corrected. Copies of the demand of October 2, 2002 and the demand of October 14, 2002 are attached to this affidavit as Exhibits 1 and 2, respectively.

"To the date of this affidavit, the Firm of Fleming & Hernandez, P.C. has expended 111.25 number of hours in the defense of the declaratory judgment action and has incurred expenses in that defense in the amount of Three Thousand Three Hundred Nineteen and 58/100ths ($3,319.58) Dollars. It is my opinion that the hourly rate of One Hundred Eighty and no/100ths ($180.00) Dollars is normal and reasonable in Cameron County, Texas for the defense of a declaratory judgment action and prosecution of a counterclaim in admiralty based upon my thirty-three (33) years of experience and involvement in litigation in this area. The total attorney's fees of Twenty Thousand Twenty-five and no/100ths ($20,025.00) Dollars and expenses of Three Thousand Three Hundred Nineteen and 58/100ths ($3,319.58) Dollars, based upon the number of hours expended and expenses incurred is, in my opinion, a reasonable and necessary fee and costs incurred."

*"EXHIBIT H"* - AFFIDAVIT OF TOM FLEMING                                                                    Page 2 of 3
to Motion for Summary Judgment and Brief in Support
TF/bgw  #011087  L:\WARNKE\CLIENT\Ponce\USDC-Brnsv'le\1Aff-Fleming.wpd

FURTHER, AFFIANT SAYETH NAUGHT.



Tom Fleming

STATE OF TEXAS                    §
                                  §
COUNTY OF CAMERON                 §

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned Notary Public, by

the said **Tom Fleming**, on this, the 12th day of February, 2003, to certify which

WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE.

> BARBARA WARNKE
> MY COMMISSION EXPIRES
> May 2, 2005

Notary Public, State of Texas.

---

*"EXHIBIT H"* - AFFIDAVIT OF TOM FLEMING                    Page 3 of 3
to Motion for Summary Judgment and Brief in Support
TF/bgw  #011087  L:\WARNKE\CLIENT\Ponce\USDC-Brnsv'le\1Aff-Fleming.wpd

# FLEMING & HERNANDEZ, P.C.

**Attorneys at Law**
1650 Paredes Line Road, Suite 102
Brownsville, Texas  78521-1602

Tom Fleming
Luis R. Hernandez
Jeffrey G. Mathews

(956) 982-4404
FAX (956) 982-0943
EMAIL FLEMOLPC@HILINE.NET

October 2, 2002

***CERTIFIED UNITED STATES MAIL***
***RETURN RECEIPT REQUESTED***
***NUMBER 7000 0520 0022 1411 7428***

INSURANCE COMPANY OF THE WEST
P. O. Box 85563
San Diego, California  92186-5563

Re:    **Your Policy No. OMP 1843083-00**
**Insured:  Lazaro Ponce de Leon**

Gentlemen:

This firm represents Luis Omar Ponce de Leon, Administrator of the Estate of Lazaro Ponce de Leon.  Your policy of insurance referenced above included Hull and Machinery protection for the M/V SEA SCAPE owned by Mr. Ponce de Leon.

On March 1, 2001, that vessel was lost at 18° 44' 94" North Latitude and 87° 32' 49" West Longitude.  A Property Loss Notice was completed and provided to you on or about March 2, 2001.  At the time of the issuance of the policy and at the time of the loss, Mr. Ponce de Leon was a resident alien legally residing within the State of Texas.

Instead of attempting to effectuate a fair, prompt and equitable settlement of this claim when your liability became reasonably clear, you filed suit in an inappropriate jurisdiction.  Further, you have failed to provide promptly to the policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for your denial of the claim.

Each of the above acts of commission and omission violates Article 21.21, Section 9 of the Texas Insurance Code.  Demand is hereby made, pursuant to Article 21.21, Section 16(e), Texas Insurance Code, for payment within sixty (60) days of receipt of this demand of the sum of Two Hundred Eighty-five Thousand and no/100ths ($285,000.00) Dollars actual damages and Twenty Thousand and



EXHIBIT NO. 1

INSURANCE COMPANY OF THE WEST
October 2, 2002
Page 2 of 2

no/100ths ($20,000.00) Dollars in expenses and attorney's fees reasonably incurred to-date in asserting this claim against you in the proper venue.

Your failure to comply with this demand could result in the United States District Court for the Southern District of Texas entering judgment against you for three times the amount of actual damages, court costs and reasonable and necessary attorney's fees pursuant to applicable provisions of the Texas Insurance Code.

Should you have questions or comments, please advise.

Very truly yours,

FLEMING & HERNANDEZ, P.C.

by:
    Tom Fleming

TF/bgw

cc:    Mr. Henry King
       KING, LeBLANC & BLAND, L.L.P.
       201 St. Charles Avenue
       Suite 3800
       New Orleans, Louisiana 70170
       (First Class United States Mail)

       Mr. Blane H. Crutchfield
       HAND ARENDALL, L.L.C.
       P. O. Box 123
       Mobile, Alabama 36601-0123
       (Certified United States Mail, R.R.R., #7000 0520 0022 1411 7435)

#011087
L:\WARNKE\CLIENT\Ponce\InsCoWest-1Ltr.wpd

# FLEMING & HERNANDEZ, P.C.

**Attorneys at Law**
1650 Paredes Line Road, Suite 102
Brownsville, Texas  78521-1602

Tom Fleming
Luis R. Hernandez
Jeffrey G. Mathews

(956) 982-4404
FAX (956) 982-0943
EMAIL FLEMOLPC@HILINE.NET

October 14, 2002

**_CERTIFIED UNITED STATES MAIL_**
**_RETURN RECEIPT REQUESTED_**
**_NUMBER 7099 3400 0015 1923 2616_**

INSURANCE COMPANY OF THE WEST
P. O. Box 85563
San Diego, California  92186-5563

> **Re:**   **Your Policy No. OMP 1843083-00**
> **Insured:  Lazaro Ponce de Leon**

Gentlemen:

Please allow this correspondence to amend our demand dated October 2, 2002 in the following particulars:

The section of Texas Insurance Code, Article 21.21, violated by your actions is Section 4, rather than Section 9.

Further, we believe that you knew or should have known that it was reasonably clear that Mr. Ponce's claim was covered.

We also believe that you have breached your duty of good faith and fair dealing by failing to reasonably investigate Mr. Ponce's claim.

We apologize for our omissions in the original demand.

Very truly yours,

FLEMING & HERNANDEZ, P.C.

by: _Tom Fleming_
Tom Fleming

TF/bgw

EXHIBIT NO. 2

INSURANCE COMPANY OF THE WEST
October 14, 2002
Page 2 of 2

cc:    Mr. Henry King
       KING, LeBLANC & BLAND, L.L.P.
       201 St. Charles Avenue
       Suite 3800
       New Orleans, Louisiana  70170
       (*First Class United States Mail*)

       Mr. Blane H. Crutchfield
       HAND ARENDALL, L.L.C.
       P. O. Box 123
       Mobile, Alabama  36601-0123
       (*Certified United States Mail, R.R.R., #7099 3400 0015 1923 2609*)

#011087
L:\WARNKE\CLIENT\PonceInsCoWest-2Ltr.wpd